AFFORDABLE CARE, INC., AMERICAN DENTAL PARTNERS, INC., AMERICAN DENTAL PARTNERS OF NORTH CAROLINA, INC., DENTAL CARE PARTNERS, INC., AND DENTAL HEALTH MANAGEMENT, INC., PLAINTIFFS v. NORTH CAROLINA STATE BOARD OF DENTAL EXAMINERS; THE NORTH CAROLINA RULES REVIEW COMMISSION, AND JULIAN MANN, III, IN HIS OFFICIAL CAPACITY AS THE CODIFIER OF RULES, DEFENDANTS

No. COA01-1526

(Filed 5 November 2002)

1. **Administrative Law— rule-making proceeding—dentistry management arrangements—failure to exhaust administrative remedies**

    The trial court did not err in an action seeking to invalidate administrative rule 21 NCAC 16X.0101(a) regarding the propriety of dentistry management arrangements by granting defendant Board of Dental Examiners' motion for judgment on the pleadings with respect to the nonconstitutional claims based on plaintiffs' failure to first exhaust all available administrative remedies including the right to petition for a declaratory judgment under N.C.G.S. § 150B-4 and the ability to petition the Rules Review Commission for adoption or amendment of a rule under N.C.G.S. § 150B-20, because: (1) nothing in the statutes or our case law suggests these remedies are no longer available or worthwhile; (2) plaintiffs did not allege futility in the complaint nor other facts justifying avoidance of the administrative process; (3) plaintiffs' amendment to the record on appeal to show that they filed requests for a declaratory judgment ruling from the Board under N.C.G.S. § 150B-4 were not before the trial court when it considered defendants' motions since these requests were filed after the trial court dismissed plaintiffs' complaint; and (4) the record as amended still failed to show that plaintiffs availed themselves of the remedy available under N.C.G.S. § 150B-20.

2. **Dentists; Constitutional Law— rule-making proceeding—dentistry management arrangements—substantive due process—rational basis—facial challenge—vagueness**

    The trial court did not err in an action seeking to invalidate administrative rule 21 NCAC 16X.0101(a) regarding the propriety of dentistry management arrangements by determining that defendant Board of Dental Examiners was entitled to judgment as a matter of law on the constitutional claim of substantive due

process, because: (1) the rule is rationally related to a legitimate government interest since its purpose is to protect the public health and welfare with respect to the practice of dentistry; (2) plaintiffs' facial challenge that the rule is unconstitutional based on it being unduly burdensome and its failure to provide a time-frame for Board review of contracts does not succeed since it cannot be said that there is no set of circumstances under which the rule would be valid; (3) the rule only prohibits contracts which grant improper control of dental practices to nonlicensed entities; (4) the Board could exempt any management contract submitted for review from public record by reviewing the contract under N.C.G.S. § 90-41; and (5) the rule is not vague since it sets forth in some detail the types of contract provisions which grant improper control over a dentist practice and provides guidance for the Board's review.

**3. Dentists; Constitutional Law— rule-making proceeding— dentistry management arrangements—procedural due process—notice and opportunity to be heard**

The trial court did not err in an action seeking to invalidate administrative rule 21 NCAC 16X.0101(a) regarding the propriety of dentistry management arrangements by determining that defendant Board of Dental Examiners was entitled to judgment as a matter of law on the constitutional claim of procedural due process, because: (1) plaintiffs had ample notice of the rule-making proceedings and took advantage of various opportunities to be heard prior to the rule's adoption; and (2) defendants substantially complied with Administrative Procedure Act procedures in adopting the rule.

**4. Dentists; Constitutional Law— rule-making proceeding— dentistry management arrangements—equal protection— rational basis**

The trial court did not err in an action seeking to invalidate administrative rule 21 NCAC 16X.0101(a) regarding the propriety of dentistry management arrangements by determining that defendant Board of Dental Examiners was entitled to judgment as a matter of law on the constitutional claim of equal protection based on the alleged impermissible distinction between a dental service provider offering more than one service to a dentist (or bundled services) and those offering single services, because: (1) the rule does not distinguish between companies offering bundled services and single service providers; and (2)

AFFORDABLE CARE, INC. v. N.C. STATE BD. OF DENTAL EXAM'RS

[153 N.C. App. 527 (2002)]

any distinctions in the rule are rationally related to the rule's legitimate governmental interest.

**5. Dentists— rule-making proceeding—dentistry management arrangements—motion to dismiss—failure to state claim**

The trial court did not err in an action seeking to invalidate administrative rule 21 NCAC 16X.0101(a) regarding the propriety of dentistry management arrangements by dismissing plaintiff companies' claims against defendant Rules Review Commission based on plaintiffs' failure to state a claim for relief, because: (1) the rule does not violate plaintiffs' constitutional rights; and (2) neither defendant Board of Dental Examiners nor defendant Commission violated administrative law in proposing and adopting the rule.

Appeal by plaintiffs from orders entered 24 August 2001 and 4 September 2001 by Judge Orlando F. Hudson, Jr., in Wake County Superior Court. Heard in the Court of Appeals 9 September 2002.

*Kilpatrick Stockton LLP, by Noah H. Huffstetler, III, Sharon L. McConnell, and Emily A. Moseley, for plaintiff-appellants.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Grady L. Balentine, Jr., for defendant-appellee North Carolina Rules Review Commission.*

*Ellis & Winters, LLP, by Richard W. Ellis and Paul K. Sun, Jr., for defendant-appellee North Carolina State Board of Dental Examiners.*

MARTIN, Judge.

Affordable Care, Inc., American Dental Partners, Inc., American Dental Partners of North Carolina, Inc., Dental Care Partners, Inc., and Dental Health Management, Inc. ("plaintiffs") filed this action in the superior court challenging the validity of administrative Rule 21 NCAC 16X.0101, entitled "Management Arrangements Rule" (hereinafter "the Rule") proposed by the North Carolina State Board of Dental Examiners ("the Board") and adopted into law by the North Carolina Rules Review Commission ("the Commission") (collectively, "defendants"). Plaintiffs are companies which provide non-clinical business services to dental practices; they allege their businesses have been negatively impacted by the Rule, and that

the Rule is both unconstitutional and was adopted in violation of administrative law.

The Board, an administrative agency, has authority pursuant to the Dental Practice Act to regulate the practice of dentistry for the protection of public health, and to make regulations to enforce that objective. *See* N.C. Gen. Stat. § 90-22, *et seq.* (2001). The Commission reviews and, when appropriate, adopts rules and regulations proposed by administrative agencies such as the Board. On 1 June 2000, the Board published in the North Carolina Register notice of a rule-making proceeding involving the types of management arrangements into which dentists may enter. The text of the proposed Rule was published on 15 August 2000, along with notice of a public hearing. Some of plaintiffs submitted written comments on the Rule. Following a public hearing on 30 September 2000, the Board amended the Rule to narrow its scope, and thereafter submitted it to the Commission.

The Commission met to review the Rule on 16 November 2000. Plaintiffs attended the meeting and objected to the Rule, arguing that it would have a substantial economic impact. Accordingly, the Commission referred the Rule to the Office of State Budget, Planning and Management ("OSBPM") for a determination of the Rule's economic impact. Plaintiffs submitted affidavits to the OSBPM, attesting, among other things, to the fact that the Rule would cause them to lose their business. The OSBPM considered plaintiffs' materials and concluded the Rule would not have a substantial economic impact and, therefore, no fiscal note was required for the Rule pursuant to G.S. § 150B-21.4(b1).

The Commission conducted a hearing with respect to the Rule on 21 December 2000. Plaintiffs were represented at the hearing and argued, among other things, that a particular section of the Rule, section (f), was ambiguous. The Commission agreed with plaintiffs, and voted to approve the Rule as it appeared before them with section (f) deleted. Following the meeting, the Board deleted section (f) from the Rule. The Commission approved the Rule, and it was published in the North Carolina Register on 15 February 2001 and became effective 1 April 2001.

The Rule provides:

No dentist or professional entity shall enter into a management arrangement, contractual agreement, stipulation, or other legal binding instrument with a business entity, corporation, propri-

etorship, or other business entity, for the provision of defined business services, bundled business services, or other business services, the effect of which may provide control of business activities or clinical/professional services of that dentist or professional entity.

21 NCAC 16X.0101(a) (2002). The Rule exempts agreements "for the provision of legal, financial, or other services not related to the provision of management services for a fee or to employment arrangements between an employee and the dentist or professional entity." 21 NCAC 16X.0101(a) (2002). The Rule sets forth the types of agreement provisions which would provide improper control of a practice's business and which are prohibited. The Rule also provides that the Board will review management arrangements. 21 NCAC 16X.0101(b)(2) (2002).

Plaintiffs filed their complaint in this action on 3 April 2001 seeking to invalidate the Rule, alleging its substance and manner of adoption violated their due process and equal protection rights, and that defendants exceeded their statutory authority in proposing and adopting the Rule. The Commission, along with co-defendant Julian Mann, III, moved to dismiss the complaint under Rule 12(b)(6) of the Rules of Civil Procedure on 7 May 2001. The Board filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Rules of Civil Procedure on 4 June 2001. Both motions were heard on 22 August 2001, after which the trial court entered an order dismissing Mann from the case, without objection from plaintiffs. On 24 August 2001, the trial court entered an order granting the Board's motion for judgment on the pleadings after finding plaintiffs had failed to exhaust all administrative remedies available to them with respect to their non-constitutional claims, and that no genuine issue of material fact existed as to plaintiffs' constitutional claims. The trial court entered a separate order on 4 September 2001 granting the Commission's motion to dismiss after finding plaintiffs had failed to state a claim for relief because the Commission had not violated its controlling statutes. Plaintiffs appeal from both orders. Plaintiff Dental Health Management Inc.'s "Motion to Withdraw from Further Participation in Appeal" was allowed on 21 May 2002.

Plaintiffs bring forward four assignments of error on appeal within the following arguments: (1) the trial court erred in finding plaintiffs failed to exhaust administrative remedies with respect to the non-constitutional claims and in granting the Board's motion on

these claims; (2) the trial court erred in determining the Board was entitled to judgment as a matter of law on the constitutional claims and in granting the Board's motion on these claims; and (3) the trial court erred in determining plaintiffs failed to state a claim for relief against the Commission and in granting the Commission's motion to dismiss. We address the arguments serially.

As a preliminary matter, plaintiffs maintain the trial court employed an incorrect standard of review in ruling upon both motions. Plaintiffs correctly note that in ruling upon motions under Rule 12(b)(6) and 12(c), the trial court must take the factual allegations of the complaint as true. The standard of review for a Rule 12(b)(6) motion is " 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Block v. County of Person*, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (citation omitted). The standard of review for a Rule 12(c) motion is whether the moving party has shown that no material issue of fact exists upon the pleadings and that he is clearly entitled to judgment. *Garrett v. Winfree*, 120 N.C. App. 689, 463 S.E.2d 411 (1995). In reviewing this motion, the trial court must take the allegations in the complaint as true and consider them in the light most favorable to the non-movant. *Id.*

Plaintiffs argue the trial court failed to follow these standards here because, if the court had taken all allegations as true, it would have agreed with plaintiffs that defendants exceeded their statutory authority and violated plaintiffs' rights. The argument, essentially that the trial court's failure to agree with plaintiffs' legal conclusions is conclusive evidence that the trial court did not take the allegations in the complaint as true, is illogical and we reject it. Though the trial court is obligated to take all of the allegations of the complaint as true in ruling upon the motion, it is elementary that the trial court must draw its own legal conclusions from those facts, and that it may draw conclusions which may differ from those advocated by plaintiffs.

## I.

[1] Plaintiffs first argue the trial court erred in granting the Board's motion for judgment on the pleadings with respect to the non-constitutional claims for plaintiffs' failure to first exhaust all available administrative remedies. We disagree. " '[W]here the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may

be had to the courts.'" *Shell Island Homeowners Ass'n, Inc. v. Tomlinson*, 134 N.C. App. 217, 220-21, 517 S.E.2d 406, 410 (1999) (citation omitted). In order to seek judicial review of an adverse administrative action, the party must establish that "(1) the party is an aggrieved party; (2) there is a contested case; (3) there has been a final agency decision; (4) all administrative remedies have been exhausted; and (5) no other adequate procedure for judicial review is provided by another statute." *Id.* at 221, 517 S.E.2d at 410.

Defendants contend plaintiffs failed to exhaust all possible remedies under the Administrative Procedure Act ("APA"), G.S. § 150B-1 *et seq.*, because plaintiffs failed to seek relief under G.S. § 150B-4 and G.S. § 150B-20 prior to filing the complaint. G.S. § 150B-4 provides plaintiffs the right to seek a declaratory ruling as to the validity of the Rule and as to its applicability to a given state of facts. N.C. Gen. Stat. § 150B-4(a) (2001). The ruling would be binding on the agency and plaintiffs unless altered or set aside by a court, and any ruling would be subject to judicial review in the same manner as an order in a contested case. N.C. Gen. Stat. § 150B-4(a) (2001). G.S. § 150B-20 provides plaintiffs with the right to petition for amendment or change to the Rule. N.C. Gen. Stat. § 150B-20(a) (2001). Plaintiffs took neither of these actions prior to filing their complaint.

Plaintiffs argue they were not required to avail themselves of these remedies following a 1995 amendment to the APA. Plaintiffs maintain that prior to the amendment, Commission decisions were not final and binding, and therefore, it was worthwhile for a party to seek an amendment or change a rule. However, plaintiffs contend that because the 1995 amendment made Commission decisions final and binding absent action by the General Assembly to disapprove a rule, G.S. § 150B-4 and G.S. § 150B-20 "are no longer the avenues for administrative relief."

However, nothing in the statutes or our case law suggests these remedies are no longer available or worthwhile. In fact, since the 1995 amendment, this Court has held that a party failed to exhaust administrative remedies where the party failed to seek various forms of administrative relief, including the right to petition for a declaratory ruling under G.S. § 150B-4. *See Shell Island Homeowners Ass'n*, 134 N.C. App. at 222, 517 S.E.2d at 411. Moreover, our Supreme Court has recognized since 1995 a party's ability to petition the Commission for adoption or amendment of a rule pursuant to G.S. § 150B-20. *See ACT-UP Triangle v. Commission for Health Services of the State of N.C.*, 345 N.C. 699, 483 S.E.2d 388 (1997); *see also Beneficial North*

*Carolina, Inc. v. State ex rel. North Carolina State Banking Com'n,*
126 N.C. App. 117, 484 S.E.2d 808 (1997).

Plaintiffs additionally argue they were not required to seek relief
under G.S. § 150B-4 and G.S. § 150B-20 because those remedies would
be futile and inadequate. Plaintiffs support this argument by alleging
the Board already demonstrated its position with respect to the Rule
and to plaintiffs' concerns, and thus, it would be futile to seek relief
from the same agency that had just rejected plaintiffs' claims. It is
true that a party need not exhaust an administrative remedy where
the remedy is inadequate. *Shell Island Homeowners Ass'n,* 134 N.C.
App. at 222, 517 S.E.2d at 411. However, futility cannot be established
by plaintiffs' prediction or anticipation that the Commission would
again rule adversely to plaintiffs' interests. *See id.* at 223, 517 S.E.2d
at 411-12. In any event, " '[t]he burden of showing the inadequacy of
the administrative remedy is on the party claiming the inadequacy,
and the party making such a claim must include such allegation in the
complaint.' " *Swain v. Elfland,* 145 N.C. App. 383, 390, 550 S.E.2d 530,
535 (citation omitted), *cert. denied,* 354 N.C. 228, 554 S.E.2d 832
(2001); *see also Bryant v. Hogarth,* 127 N.C. App. 79, 86, 488 S.E.2d
269, 273 ("[w]hile exhaustion of administrative remedies prior to
seeking judicial review may not be required in exceptional circum-
stances . . . allegations of the facts justifying avoidance of the admin-
istrative process must be pled in the complaint"), *disc. review
denied,* 347 N.C. 396, 494 S.E.2d 406 (1997).

In this case, the complaint merely alleges plaintiffs exhausted all
administrative remedies by submitting comments on the proposed
Rule and appearing before the Commission in opposition to the Rule.
Plaintiffs did not allege futility in the complaint, nor other facts
justifying avoidance of the administrative process. We agree with the
trial court that plaintiffs failed to carry their burden of establishing
exhaustion of all available administrative remedies.

By amendment to the record on appeal, plaintiffs have shown
that, on 18 January 2002, they filed requests for a declaratory ruling
from the Board pursuant to G.S. § 150B-4. However, these requests
were filed after the trial court dismissed plaintiffs' complaint, and
thus, were not before the trial court when it considered defendants'
motions. Therefore, in assessing whether the trial court erred, we
may not consider for the first time on appeal the fact that plaintiffs
sought relief under G.S. § 150B-4, as that fact was not considered by
the trial court. In any event, the record as amended still fails to show

that plaintiffs availed themselves of the remedy available under G.S. § 150B-20. The trial court did not err in granting the Board's motion for judgment on the pleadings with respect to plaintiffs' non-constitutional claims.

## II.

Plaintiffs next argue the trial court erred in its determination that the Board was entitled to judgment as a matter of law on plaintiff's constitutional claims and in granting the Board's motion with respect to those claims. "Where an aggrieved party challenges the constitutionality of a regulation or statute, administrative remedies are deemed to be inadequate and exhaustion thereof is not required." *Shell Island Homeowners Ass'n*, 134 N.C. App. at 224, 517 S.E.2d at 412. Plaintiffs assert the Rule violates their rights to substantive due process, that defendants violated their procedural due process rights, and that the Rule violates their right to equal protection of the law. Again, we disagree.

## A. Substantive Due Process

[2] Plaintiffs first argue the Rule violates their substantive due process rights because (1) the Rule bears no relation to a legitimate government interest; (2) the means to effectuate the Rule's policy are not reasonable; and (3) the Rule is impermissibly vague. For these reasons, plaintiffs maintain the Rule violates article I, section 19 of the North Carolina Constitution, the "Law of the Land" clause, providing that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19.

Not every deprivation of liberty or property constitutes a violation of substantive due process granted under article I, section 19. *Rhyne v. K-Mart Corp.*, 149 N.C. App. 672, 562 S.E.2d 82 (2002). Generally, any such deprivation is only unconstitutional where the challenged law bears no rational relation to a valid state objective. *Dobrowolska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590 (2000), *appeal dismissed as improvidently allowed*, 355 N.C. 205, 558 S.E.2d 174 (2002). In order to determine whether a law violates substantive due process, we must first determine whether the right infringed upon is a fundamental right. *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 542 S.E.2d 668, *disc. review denied*, 353 N.C. 450, 548 S.E.2d 524 (2001). If the right is constitutionally fundamental, then the court must apply a strict scrutiny analysis wherein the party seeking to apply the law must demonstrate that it serves a compelling state

interest. *Id.* at 357, 542 S.E.2d at 673. If the right infringed upon is not fundamental in the constitutional sense, the party seeking to apply it need only meet the traditional test of establishing that the law is rationally related to a legitimate state interest. *Id.* at 357-58, 542 S.E.2d at 673. In other words, the law will survive this test "if it bears 'some rational relationship to a conceivable legitimate interest of government.'" *Id.* at 358, 542 S.E.2d at 674 (citation omitted). Under this "rational relation" test, the law in question is presumed to be constitutional. *Id.*

In the present case, plaintiffs do not argue that any fundamental right has been infringed, and they appear to concede in this argument that defendants need only show the Rule bears a rational relation to a legitimate governmental interest. Interestingly, however, in their subsequent equal protection argument, plaintiffs do assert the Rule violates their fundamental right to engage in lawful business activities, thereby warranting a strict scrutiny equal protection analysis. We therefore address whether the right upon which the Rule allegedly infringes (i.e., plaintiffs' right to engage in business with dentists) is a fundamental right which requires defendants to show the Rule serves a compelling state interest. We conclude it is not.

In arguing a fundamental right is affected for purposes of equal protection, plaintiffs rely on our Supreme Court's decision in *In re Certificate of Need for Aston Park Hospital, Inc.*, 282 N.C. 542, 193 S.E.2d 729 (1973). In that case, the court invalidated a law granting the North Carolina Medical Care Commission the ability to prevent construction of a hospital with private funds and on private property which met all necessary hospital standards, for the sole reason that the area already maintained enough hospital beds sufficient to meet the needs of the community. *Id.* at 548, 193 S.E.2d at 733. The court determined due process would not allow the law to prevent the hospital from engaging in the business of caring for the sick because the law bore no rational relation between the public health and the denial of an entity's right to construct and operate with its own funds an otherwise lawful medical facility. *Id.* at 551, 193 S.E.2d at 735. It is clear from the opinion that, in so holding, the Supreme Court applied the rational relation test, not strict scrutiny.

Indeed, the *Aston Park* decision contains no authority for the proposition that a regulation affecting one's ability to engage in otherwise lawful business or other economic regulation is subject to strict scrutiny. To the contrary, the case establishes the appropriate analysis is the rational relation test. While the court did observe that,

"[t]o deny a person, association or corporation the right to engage in a business, otherwise lawful, is a far greater restriction upon his or its liberty than to deny the right to charge in that business whatever prices the owner sees fit to charge for service," it determined the only consequence of this fact is that the party seeking to apply the law must show a greater likelihood of public benefit. *Id.* at 550, 193 S.E.2d at 735. Nevertheless, the court applied the rational relation test.

The courts of this State have more recently emphasized that economic rules and regulations do not affect a fundamental right for purposes of due process and equal protection. *See, e.g., State ex rel. Utilities Com'n v. Carolina Utility Customers Ass'n, Inc.*, 336 N.C. 657, 446 S.E.2d 332 (1994); *Town of Beech Mountain v. County of Watauga*, 324 N.C. 409, 378 S.E.2d 780, *cert. denied*, 493 U.S. 954, 107 L. Ed. 2d 351 (1989); *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 350, 542 S.E.2d 668 (2001); *Matter of Consolidated Appeals of Certain Timber Companies from Denial of Use Value Assessment and Taxation by Certain Counties*, 98 N.C. App. 412, 391 S.E.2d 503 (1990). This Court has observed that "the Supreme Court's reluctance to invalidate economic legislation suggests that the right to engage in legitimate business is not 'fundamental' for purposes of federal due process analysis." *Treants Enterprises, Inc. v. Onslow County*, 83 N.C. App. 345, 352, 350 S.E.2d 365, 370 (1986), *affirmed*, 320 N.C. 776, 360 S.E.2d 783 (1987).

Plaintiffs have cited no authority establishing that an economic regulation, such as one affecting the right to engage in business, affects a fundamental right or has been subjected to strict scrutiny by our courts; nor have plaintiffs argued the Rule is not an economic regulation. Relying on the authorities cited above, we hold the Rule is not subject to strict scrutiny for purposes of substantive due process or equal protection. Therefore, for purposes of due process, the Rule must be upheld if it is rationally related to a legitimate governmental interest, and in so assessing, we must presume the Rule's validity. *See Clark*, 142 N.C. App. at 358, 542 S.E.2d at 674.

## 1. Legitimate Governmental Interest

We agree with defendants that the Rule's purpose is to protect the public health and welfare with respect to the practice of dentistry, and that this purpose is a legitimate governmental interest. Plaintiffs argue the administrative record does not contain any reference to public health or to the Board's purpose in promulgating the Rule, and that defendants cannot now, following the commencement of litiga-

tion, assert the Rule's purpose is to protect public health and welfare. Plaintiffs cite to various pages of transcript from the 21 December 2000 Commission meeting to support their position that the Board did not promulgate the Rule to protect public health. However, those pages reveal that the Board's representative clearly stated before the Commission that the purpose of the Rule was to effectuate the mandate of the Dental Practice Act and the position of the Attorney General that the corporate management of dental practices is prohibited because it "endangers the public." The Board stated its position that the Rule is "to protect the public's health, safety and welfare," because when corporations which are unlicensed to practice dentistry gain improper control over dental practices, "the concern is that patient care becomes secondary to profits." In fact, plaintiffs' representative stated before the Commission that plaintiffs "agree with the public purpose for the[] rule[], which is clearly to make sure that there's high quality, cost effective dental care." Thus, we disagree with plaintiffs' assertion that the Board was silent as to the purpose of the Rule until the commencement of this action.

The first paragraph of the Rule clearly states that its purpose is to prohibit management arrangements which provide improper control over the clinical or professional services of a dentist to a business entity. The Dental Practice Act establishes this to be a legitimate governmental purpose inasmuch as it declares that "the practice of dentistry . . . affect[s] the public health, safety and welfare," and as such, is "subject to regulation and control in the public interest." N.C. Gen. Stat. § 90-22(a) (2001). The Act defines "the practice of dentistry" as occurring when one "[o]wns, manages, supervises, controls or conducts" various dental acts, and it prohibits the practice by unlicensed persons. N.C. Gen. Stat. §§ 90-29(b)(11), 90-40 (2001). Our Supreme Court has recognized that a rule's implementation of a purpose set forth by the General Assembly constitutes a legitimate governmental objective. *See In re North Carolina Pesticide Bd. File Nos. IR94-128, IR94-151, IR94-155*, 349 N.C. 656, 509 S.E.2d 165 (1998). We hold the Rule has a legitimate governmental purpose.

## 2. Rational Means

Plaintiffs contend that even if the Rule furthers a legitimate purpose, the means it provides to effectuate that purpose are not rational and the burden outweighs any public benefit. Specifically, they argue the Rule's provision requiring Board review of all management contracts places a significant burden on both companies and dentists, and that the Rule provides no meaningful time-frame or standards for

review. In addition, plaintiffs argue that when they submit contracts to the Board for review, confidential business information will become public record.

These challenges to the Rule are facial challenges, as plaintiffs do not assert the Rule has actually been applied unconstitutionally to them. Our Supreme Court has recognized that a facial challenge to a law is " 'the most difficult challenge to mount successfully.' " *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 281 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987)). In a facial challenge, the presumption is that the law is constitutional, and a court may not strike it down if it may be upheld on any reasonable ground. *Id.* at 491, 508 S.E.2d at 281-82. "An individual challenging the facial constitutionality of a legislative act 'must establish that no set of circumstances exists under which the [a]ct would be valid.' " *Id.* at 491, 508 S.E.2d at 282 (citation omitted). "The fact that a statute 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.' " *Id.* (citation omitted).

Plaintiffs argue the Rule is unconstitutional because it would be unduly burdensome and fails to provide a time-frame for Board review of contracts. Under this facial challenge, we cannot agree that there is no set of circumstances under which the Rule would be valid. The Rule was changed from requiring Board approval of all contracts to simply requiring Board review of all contracts, and thus, companies like plaintiffs are not delayed in entering agreements with dentists. In a 22 March 2002 declaratory ruling issued subsequent to the dismissal of plaintiffs' complaint, the Board notes management companies are not required to terminate their agreements or modify their terms while the agreement is being reviewed by the Board, and that the Dental Practice Act will only be enforced against a management company or dentist when the Board has affirmatively ruled that an agreement violates the Rule and the parties thereafter refuse to modify its terms to comply with the Rule.

Moreover, although plaintiffs assert the Rule effectively precludes them from engaging in business, the Rule only prohibits contracts which grant improper control of dental ·practices to non-licensed entities. Plaintiffs are otherwise free to contract with dentists in any other legal manner. Defendants argue, and we agree, that Board review of contracts is not an unreasonable means to effectuate the Board's legitimate governmental interest. Rules requiring agency review of contracts are not extraordinary. *See, e.g.*, 4 NCAC

3C.0110 (2002); 11 NCAC 20.0204 (2002); 11 NCAC 13.0512 (2001). Neither does the absence of a time-frame for review necessarily invalidate the Rule. The Rule could be applied constitutionally where Board review does not involve undue delay or otherwise significantly impede the operation of contracts within a reasonable time-frame.

Moreover, in regard to plaintiffs' concern that contracts would become public record when submitted for Board review, it is conceivable the Board could exempt any management contract submitted for review from public record by reviewing the contract under G.S. § 90-41. Under that statute, all "[r]ecords, papers, and other documents containing information collected or compiled by the Board . . . as a result of investigations, inquiries, or interviews conducted in connection with a licensing or disciplinary matter, shall not be considered public records . . . ." N.C. Gen. Stat. § 90-41(g) (2001). G.S. § 90-41 grants the Board authority to take action when a dentist has engaged in any act or practice which violates any rules promulgated by the Board, which necessarily includes the Rule at issue in this case, or has assisted another entity in violation of Board rules. N.C. Gen. Stat. § 90-41(a)(6). Board review of management contracts to determine whether they give improper control of a dentist's practice to a non-licensed management service provider could constitute an investigation or inquiry into whether a dentist has violated the Rule. Under G.S. § 90-41(g), anything collected in connection with such an inquiry would not be public record, even though the Board may determine that no violation occurred. Indeed, in its 22 March 2002 declaratory ruling, the Board ruled that agreements under review will not be public record, as G.S. § 90-41(g) applies to Board review of agreements.

### 3. Vagueness

In their final substantive due process argument, plaintiffs contend the Rule is unconstitutionally vague. "The test for 'vagueness' recognized by our Supreme Court holds that 'a statute is unconstitutionally vague if it either: (1) fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited"; or (2) fails to "provide explicit standards for those who apply [the law]." ' " *State v. Sanford Video & News, Inc.*, 146 N.C. App. 554, 556, 553 S.E.2d 217, 218 (2001) (citations omitted), *disc. review denied*, 355 N.C. 221, 560 S.E.2d 359 (2002). Plaintiffs argue the Rule is vague because it fails to specifically state what types of arrangements are prohibited and fails to provide the Board with specific standards for enforcement.

Upon review of the Rule's provisions, we disagree. The Rule sets forth in some detail the types of contract provisions which grant improper control over a dental practice. We believe its provisions are specific enough to give dentists and companies like plaintiffs a reasonable understanding of what is prohibited by the Rule. Moreover, we cannot agree with plaintiffs' position that the Rule provides the Board no guidance for its enforcement. The same provisions that provide plaintiffs a reasonable opportunity to know what is prohibited also guide the Board in its review. Under this facial challenge, we must presume the Board will follow the Rule and adjudicate the legality of the contracts based on the Rule's specific provisions as to what is prohibited. *See Thompson*, 349 N.C. at 491, 508 S.E.2d at 281-82. These arguments are overruled.

## B. Procedural Due Process

[3] Plaintiffs next argue defendants violated their procedural due process rights in proposing and adopting the Rule by (1) failing to provide plaintiffs notice and an opportunity to be heard and failing to follow APA procedures in this regard; and (2) exceeding their statutory authority.

The basic premise of procedural due process protection is notice and the opportunity to be heard in a meaningful manner. *Summers v. City of Charlotte*, 149 N.C. App. 509, 562 S.E.2d 18, *disc. review denied*, 355 N.C. 758, 566 S.E.2d 482 (2002). Plaintiffs argue they were deprived of both notice and an opportunity to be heard during the rule-making process. However, the record establishes that plaintiffs received notice of the initial rule-making proceedings on 1 June 2000; that they received notice of the actual text of the proposed Rule on 15 August 2000; that on the same date, plaintiffs received notice of a public hearing on the proposed Rule; that prior to the hearing, plaintiffs submitted comments to the Board regarding the proposed Rule; that at the 30 September 2000 public hearing, the Board considered plaintiffs' comments, and in light thereof, referred the proposed Rule to its staff for review and revision; that plaintiffs submitted affidavits regarding the Rule's economic impact which were considered by the Commission and OSBPM; that plaintiffs were represented and had the opportunity to argue before the Commission during a 16 November 2000 meeting regarding the Rule; and that plaintiffs appeared in opposition to the Rule at the final 21 December 2000 meeting of the Commission following which the Rule was approved. Indeed, on more than one occasion, defendants altered or amended

the Rule in response to plaintiffs' comments and objections. Plaintiffs had notice and opportunities to be heard sufficient to comport with due process.

Plaintiffs also argue their due process rights were violated because defendants failed to comply with APA procedures in promulgating the Rule. Plaintiffs first contend the Board violated APA procedure when it failed to republish the text of the proposed Rule after making changes following its 30 September 2000 meeting. Following that meeting, at which the Board considered plaintiffs' comments, the Board amended the proposed Rule to clarify its scope, and thereafter submitted the Rule to the Commission for review. Plaintiffs contend the Board's failure to republish the Rule in the North Carolina Register following these changes was a violation of G.S. § 150B-21.2(g), providing that "[a]n agency shall not adopt a rule that differs substantially from the text of the proposed rule published in the North Carolina Register unless the agency publishes the text of the proposed different rule in the North Carolina Register and accepts comments on the proposed different rule . . . ." N.C. Gen. Stat. § 150B-21.2(g) (2001).

However, republication is only required where the changed rule differs "substantially" from the original proposed rule. A substantial change is one that either (1) affects the interests of persons who could not reasonably have determined that the rule would affect their interests based on notice and publication in the North Carolina Register; (2) addresses a new subject matter; or (3) produces an effect that could not reasonably have been expected based on the text of the original proposed rule. N.C. Gen. Stat. § 150B-21.2(g)(1),(2),(3) (2001). Defendants assert, and we agree, that the changes to the Rule following its initial publication in the North Carolina Register, while narrowing the Rule's scope, were not substantial within the meaning of G.S. § 150B-21.2(g), and therefore, republication was not required.

Following its initial publication, the Board amended the Rule to (1) exempt the provision of legal, financial, or other services unrelated to the provision of management services, (2) insert section (f), which addressed the granting of *de facto* control of a dental practice to a management company, (3) change the requirement that the Board approve all contracts to a requirement that the Board simply review all contracts, and (4) eliminate the requirement that contracts be commercially reasonable. The Rule also contained various inconsequential alterations. The addition of section (f) is a non-issue, as that

section was later deleted. As to the remaining changes, we do not believe they either (1) affected the interests of persons who could not have reasonably determined so based on the prior publication, (2) addressed a new subject matter, or (3) produced an effect not reasonably to be expected based on the initial proposed Rule. Rather, the changes simply clarified and narrowed the scope of the Rule. Accordingly, republication was not required.

Plaintiffs also argue the Commission violated APA procedure when it voted to adopt the Rule with section (f) deleted without first sending a written objection to the proposed Rule containing section (f) to the Board. Plaintiffs observe this is a violation of G.S. § 150B-21.12(a), which provides that when the Commission objects to a proposed rule, the Commission must "send the agency that adopted the rule a written statement of the objection and the reason for the objection." N.C. Gen. Stat. § 150B-21.12(a) (2001). While we agree with plaintiffs that, technically, the APA requires the Commission to send a written notice of objection to the Board, we do not believe its failure to do so here amounted to a violation of plaintiffs' procedural due process rights. The Commission had before it the full text of the Rule which it approved and was clear in stating to plaintiffs and the Board that it would approve the Rule so long as section (f) was deleted, in accordance with plaintiffs' request. The purpose of G.S. § 150B-21.12(a), to ensure the Board is clear as to the Commission's objection, was served. A Rule is valid so long as it is adopted "in substantial compliance" with APA procedures. N.C. Gen. Stat. § 150B-18 (2001). The Commission substantially complied with APA procedures in adopting the Rule, and to the extent it deviated slightly from proscribed procedures, plaintiffs' due process rights were not violated.

Plaintiffs additionally maintain defendants exceeded their statutory authority in adopting the Rule. Specifically, they argue defendants had no authority to promulgate the Rule because it had no bearing on public health and welfare, and because only the legislature has authority to regulate management contracts in the manner accomplished by the Rule. We have already determined the Rule embodies a legitimate governmental purpose of protecting the public health and welfare, and we thus reject plaintiffs' argument on that basis.

Moreover, the legislature has clearly granted the Board the "full power and authority to enact rules and regulations governing the practice of dentistry within the State," and to effectuate the purpose

of the Dental Practice Act of regulating dentistry for the protection of public health and welfare. N.C. Gen. Stat. §§ 90-48, 90-22(a) (2001). The legislature has prohibited unlicensed persons or entities from practicing dentistry in this State, and defines the practice of dentistry as occurring when an entity "[o]wns, manages, supervises, controls or conducts" dental procedures. N.C. Gen. Stat. § 90-29(b)(11) (2001). Thus, the legislature has explicitly granted the Board authority to promulgate regulations ensuring that companies such as plaintiffs do not exert improper control or supervision over dental practices. Moreover, "[i]n addition to express powers, administrative agencies have implied powers reasonably necessary for the proper execution of their express purposes." *In re Declaratory Ruling by North Carolina Com'r of Ins. Regarding 11 NCAC 12.0319*, 134 N.C. App. 22, 26, 517 S.E.2d 134, 138, (citations omitted), *disc. review denied*, 351 N.C. 105, 540 S.E.2d 356 (1999). The legislature declared in G.S. § 90-22(b) that the Board's purpose is to regulate the practice of dentistry in this State. The Board's promulgation of the Rule did not exceed its statutory authority.

In summary, defendants substantially complied with APA procedures in adopting the Rule, and plaintiffs had ample notice of the rule-making proceedings and took advantage of various opportunities to be heard prior to the Rule's adoption. We discern no violation of plaintiffs' due process rights.

## C. Equal Protection

[4] Finally, plaintiffs argue the Rule violates their right to equal protection of the laws because it impermissibly distinguishes between a dental service provider offering more than one service to a dentist, or "bundled" services, and those offering single services. The Equal Protection Clause prohibits the State from denying any person equal protection of the laws. N.C. Const. art. I, § 19.

"When a statute or ordinance is challenged on equal protection grounds, the first determination for the court is what standard of review to apply in determining constitutionality." *Transylvania County v. Moody*, 151 N.C. App. 389, 397, 565 S.E.2d 720, 726 (2002). "It is well settled that when an equal protection claim does not involve a suspect class or a fundamental right, the contested ordinance need only bear a rational relationship to a legitimate state interest." *Id.* We have already held there is no fundamental right at issue in this case, and plaintiffs do not assert they are a suspect class. Thus, any distinction in the Rule must simply bear a rational relation-

ship to its legitimate interest in ensuring only licensed dentists assert control over their dental practices.

Defendants argue, and we agree, that the Rule does not distinguish between companies offering "bundled" services and single service providers, as the first paragraph of the Rule declares that it applies to "the provision of defined business services, bundled business services, or other business services" which effectively provide control of the practice to the provider. The Rule does not exempt single service providers if the effect of the service is to convey control of the practice to the provider. To the extent the Rule exempts providers of legal, financial, or other services not related to the provision of management services, this distinction rationally relates to the purpose of the Rule, as a provider of these types of services does not possess the same potential to exert improper control over a dental practice as do companies providing management services. We conclude any distinctions are, in fact, rationally related to the Rule's legitimate governmental interest. Accordingly, the Rule does not violate plaintiffs' equal protection rights.

### III.

[5] Plaintiffs also argue the trial court erred in dismissing its claims against the Commission for its failure to state a claim for relief. Having held the Rule does not violate plaintiffs' constitutional rights, and having held that neither the Board nor the Commission violated administrative law in proposing and adopting the Rule, we conclude the trial court did not err in granting both motions and in dismissing plaintiffs' complaint. The orders of the trial court are therefore affirmed.

Affirmed.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.