IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-693

No. COA21-175

Filed 21 December 2021

Wake County, No. 19 CVS 8198

RURAL EMPOWERMENT ASSOCIATION FOR COMMUNITY HELP, *et al.*, Plaintiffs,

v.

STATE OF NORTH CAROLINA, *et al.*, Defendants.

Appeal by plaintiffs from order entered 23 December 2020 by a three-judge panel of Wake County Superior Court appointed by the Chief Justice pursuant to N.C. Gen. Stat. § 1-267.1 (2019). Heard in the Court of Appeals 1 December 2021.

*Lawyers' Committee for Civil Rights Under Law, by Elizabeth Haddix and Mark Dorosin, and Patterson Harkavy LLP, by Burton Craige, Narendra K. Ghosh and Christopher A. Brook, for plaintiffs-appellants.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Matthew Tulchin and Assistant Attorney General Kenzie M. Rakes, for the State.*

*Phelps Dunbar LLP, by Nathan A. Huff, Jared M. Burtner, W. Thomas Siler, admitted pro hac vice, and Nicholas Morisani admitted pro hac vice, for defendants-appellees Timothy K. Moore and Philip E. Berger.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Christopher G. Smith and David R. Ortiz, and Phillip Jacob Parker, Jr., Secretary & General Counsel North Carolina Farm Bureau Federation, Inc., for defendants-appellants North Carolina Farm Bureau Federation, Inc.*

*Southern Environmental Law Center, by Blakely E. Hildebrand, Alex J. Hardee, and Chandra T. Taylor, for Environmental Justice Community Action Network, amicus curiae.*

*Zaytoun Ballew & Taylor, PLLC, by Matthew D. Ballew, for North Carolina Advocates for Justice, amicus curiae.*

*Tien K. Cheng and Christopher R. McLennan for North Carolina Department of Agriculture and Consumer Services, amicus curiae.*

TYSON, Judge.

¶ 1     Rural Empowerment Association for Community Help, North Carolina Environmental Justice Community Action Network, and Waterkeeper Alliance (collectively "Plaintiffs") appeal from an order of a superior court three-judge panel, which granted Defendants' motion to dismiss in favor of the State of North Carolina; Phillip E. Berger; Timothy K. Moore, in their capacities, respectively, as President *Pro Tempore* of the North Carolina Senate and as Speaker of the North Carolina House of Representatives; and, N.C. Farm Bureau Federation, Inc., Intervenor, (collectively "Defendants"). We affirm.

## I.     Background

¶ 2     Forty-two years ago in 1979, the North Carolina General Assembly enacted the Right to Farm Act with the stated policy goal to: "[R]educe the loss to the State of its agricultural and forestry resources by limiting the circumstances under which an agricultural or forestry operation may be deemed a nuisance." N.C. Gen. Stat. § 106-700 (2019); *see* 1979 N.C. Sess. Laws ch. 202, § 1. Hundreds of plaintiffs filed

nuisance actions against swine farmers in the superior courts in 2013. The General

Assembly amended the Right to Farm Act in 2013 by rewriting N.C. Gen. Stat. § 106-701 as:

> **When agricultural and forestry operation, etc., not constituted nuisance by changed conditions in or about the locality outside of the operation.**
>
> (a) No agricultural or forestry operation or any of its appurtenances shall be or become a nuisance, private or public, by any changed conditions in or about the locality outside of the operation *after the operation has been in operation for more than one year, when such operation was not a nuisance at the time the operation began.*
>
> (a1) The provisions of subsection (a) of this section shall not apply when the plaintiff demonstrates that the agricultural or forestry operation has undergone a fundamental change. A fundamental change to the operation does not include any of the following:
>
> > (1) A change in ownership or size,
> >
> > (2) An interruption of farming for a period of no more than three years,
> >
> > (3) Participation in a government-sponsored agricultural program,
> >
> > (4) Employment of new technology,
> >
> > (5) A change in the type of agricultural or forestry product produced.
>
> (a2) The provisions of subsection (a) of this section shall not apply whenever a nuisance results from the negligent or improper operation of any agricultural or forestry

operation or its appurtenances.

(b) For the purposes of this Article, "agricultural operation" includes, without limitation, any facility for the production for commercial purposes of crops, livestock, poultry, livestock products, or poultry products.

(b1) For the purposes of this Article, "forestry operation" shall mean those activities involved in the growing, managing, and harvesting of trees.

(c) The provisions of subsection (a) shall not affect or defeat the right of any person, firm, or corporation to recover damages for any injuries or damages sustained by him on account of any pollution of, or change in condition of, the waters of any stream or on the account of any overflow of lands of any such person, firm, or corporation.

(d) Any and all ordinances of any unit of local government now in effect or hereafter adopted that would make the operation of any such agricultural or forestry operation or its appurtenances a nuisance or providing for abatement thereof as a nuisance in the circumstance set forth in this section are and shall be null and void; provided, however, that the provisions of this subsection shall not apply whenever a nuisance results from the negligent or improper operation of any such agricultural or forestry operation or any of its appurtenances. Provided further, that the provisions shall not apply whenever a nuisance results from an agricultural or forestry operation located within the corporate limits of any city at the time of enactment hereof.

(e) This section shall not be construed to invalidate any contracts heretofore made but insofar as contracts are concerned, it is only applicable to contracts and agreements to be made in the future.

(f) In a nuisance action against an agricultural or forestry operation, the court shall award costs and expenses,

including reasonable attorneys' fees, to:
> (1) The agricultural or forestry operation when the court finds the operation was not a nuisance and the nuisance action was frivolous or malicious; or
> (2) The plaintiff when the court finds the agricultural or forestry operation was a nuisance and the operation asserted an affirmative defense in the nuisance action that was frivolous and malicious.

2013 N.C. Sess. Law 314, § 1 (emphasis supplied).

The plaintiffs refiled the nuisance actions in the United States District Court for the Eastern District of North Carolina ("federal district court") in 2014 and added Murphy-Brown, LLC as a defendant. Murphy-Brown is a wholly owned subsidiary of Smithfield Foods Corporation. Murphy-Brown sought to defend the suits before the federal district court under the Right to Farm Act. The federal district court held the Right to Farm Act did not apply. *See In re NC Swine Farm Nuisance Litig.*, 2017 WL 5178038, at *4-5 (E.D.N.C. Nov. 8, 2017) (unpublished). The litigation in the federal district court without the right to farm defense resulted in five jury verdicts in favor of the plaintiffs.

In 2017 and 2018, the General Assembly again amended the Right to Farm Act. *See* An Act to Make Various Changes to the Agricultural Laws, 2018 N.C. Sess. Laws 113, § 10(a) ("S.B. 711"); An Act to Clarify the Remedies Available in Private Nuisance Actions Against Agricultural and Forestry Operations 2017 N.C. Sess. Laws 11 ("H.B. 467").

S.B. 711 was codified as N.C. Gen. Stat. § 106-701, which provides:

> (a) No nuisance action may be filed against an agricultural or forestry operation unless all of the following apply:
>
> > (1) The plaintiff is a legal possessor of the real property affected by the conditions alleged to be a nuisance.
> >
> > (2) The real property affected by the conditions alleged to be a nuisance is located within one half-mile of the source of the activity or structure alleged to be a nuisance.
> >
> > (3) The action is filed within one year of the establishment of the agricultural or forestry operation or within one year of the operation undergoing a fundamental change.
>
> (a1) For the purposes of subsection (a) of this section, a fundamental change to the operation does not include any of the following:
>
> > (1) A change in ownership or size.
> >
> > (2) An interruption of farming for a period of no more than three years.
> >
> > (3) Participation in a government-sponsored agricultural program.
> >
> > (4) Employment of new technology.
> >
> > (5) A change in the type of agricultural or forestry product produced.
>
> (b) For the purposes of this Article, "agricultural operation" includes, without limitation, any facility for the production for commercial purposes of crops, livestock, poultry, livestock products, or poultry products.

(b1) For the purposes of this Article, "forestry operation" shall mean those activities involved in the growing, managing, and harvesting of trees.

(c) The provisions of subsection (a) shall not affect or defeat the right of any person, firm, or corporation to recover damages for any injuries or damages sustained by him on account of any pollution of, or change in condition of, the waters of any stream or on the account of any overflow of lands of any such person, firm, or corporation.

(d) Any and all ordinances of any unit of local government now in effect or hereafter adopted that would make the operation of any such agricultural or forestry operation or its appurtenances a nuisance or providing for abatement thereof as a nuisance in the circumstance set forth in this section are and shall be null and void. Provided, however, that the provisions shall not apply whenever a nuisance results from an agricultural or forestry operation located within the corporate limits of any city at the time of enactment hereof.

(e) This section shall not be construed to invalidate any contracts heretofore made but insofar as contracts are concerned, it is only applicable to contracts and agreements to be made in the future.

(f) In a nuisance action against an agricultural or forestry operation, the court shall award costs and expenses, including reasonable attorneys' fees, to:

(1)The agricultural or forestry operation when the court finds the operation was not a nuisance and the nuisance action was frivolous or malicious; or

(2)The plaintiff when the court finds the agricultural or forestry operation was a nuisance and the operation asserted an affirmative defense in the nuisance action

that was frivolous and malicious.

N.C. Gen. Stat. § 106-701 (2019).

¶ 6         H.B. 467 was codified as N.C. Gen. Stat. § 106-702, which provides:

**Limitations on private nuisance actions against agricultural and forestry operations**

(a) The compensatory damages that may be awarded to a plaintiff for a private nuisance action where the alleged nuisance emanated from an agricultural or forestry operation shall be as follows:

(1) If the nuisance is a permanent nuisance, compensatory damages shall be measured by the reduction in the fair market value of the plaintiff's property caused by the nuisance, but not to exceed the fair market value of the property.

(2) If the nuisance is a temporary nuisance, compensatory damages shall be limited to the diminution of the fair rental value of the plaintiff's property caused by the nuisance.

(a1) A plaintiff may not recover punitive damages for a private nuisance action where the alleged nuisance emanated from an agricultural or forestry operation that has not been subject to a criminal conviction or a civil enforcement action taken by a State or federal environmental regulatory agency pursuant to a notice of violation for the conduct alleged to be the source of the nuisance within the three years prior to the first act on which the nuisance action is based.

(b) If any plaintiff or plaintiff's successor in interest brings a subsequent private nuisance action against any agricultural or forestry operation, the combined recovery from all such actions shall not exceed the fair market value

of the property at issue. This limitation applies regardless of whether the subsequent action or actions were brought against a different defendant than the preceding action or actions.

(c) This Article applies to any private nuisance claim brought against any party based on that party's contractual or business relationship with an agricultural or forestry operation.

(d) This Article does not apply to any cause of action brought against an agricultural or forestry operation for negligence, trespass, personal injury, strict liability, or other cause of action for tort liability other than nuisance, nor does this Article prohibit or limit any request for injunctive relief that is otherwise available.

N.C. Gen. Stat. § 106-702 (2019).

Plaintiffs' complaint was filed on 19 June 2019 and challenges the facial constitutionality of H.B. 467 and S.B. 711 (collectively "The Amendments"). Defendants moved to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2019) on 1 October 2019. Plaintiffs moved for summary judgment under N.C. Gen. Stat. § 1A-1, Rule 56 (2019). The Wake County Superior Court transferred this case to a three-judge panel pursuant to N.C. Gen. Stat. § 1A-1, Rule 42(b)(4) (2019) and N.C. Gen. Stat. § 1-267.1 (2019).

On 23 December 2020, the three-judge panel granted Defendants' Rule 12(b)(6) motion to dismiss and denied Plaintiffs' summary judgment motion. Plaintiffs appeal.

## II. Jurisdiction

¶ 9      This Court possesses jurisdiction pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2019).

## III. Issue

¶ 10      Plaintiffs argue the trial court erred by granting Defendants' Rule 12(b)(6) motion.

## IV. Defendants' Rule 12(b)(6) Motion

### A. Standard of Review

¶ 11      "A Rule 12(b)(6) motion tests the legal sufficiency of the pleading." *Kemp v. Spivey*, 166 N.C. App. 456, 461, 602 S.E.2d 686, 690 (2004) (citation and quotation marks omitted). "When considering a [Rule] 12(b)(6) motion to dismiss, the trial court need only look to the face of the complaint to determine whether it reveals an insurmountable bar to plaintiff's recovery." *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (citation and quotation marks omitted).

¶ 12      "On appeal from a motion to dismiss under Rule 12(b)(6) this Court reviews *de novo* whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted[.]" *Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008) (ellipses in original) (citation and internal quotation marks omitted). This Court "consider[s] the allegations in the complaint [as] true, construe[s] the complaint liberally, and only reverse[s] the trial

court's denial of a motion to dismiss if [the] plaintiff is entitled to no relief under any set of facts which could be proven in support of the claim." *Id.* (citation omitted).

## B. Facial Challenge

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. 409, 443, 192 L. Ed. 2d 435, 443 (2015). Facial challenges are "the most difficult challenge to mount" successfully. *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987). "In a facial challenge, the presumption is that the law is constitutional, and a court may not strike it down if it may be upheld on any reasonable ground." *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 539, 571 S.E.2d 52, 61 (2002).

In a facial challenge, "a plaintiff must establish that a law is unconstitutional in all of its applications." *Patel*, 576 U.S. at 418, 192 L. Ed. 2d at 445 (citation and internal quotation marks omitted). During oral argument, Plaintiffs' counsel conceded their complaint alleges only facial challenges and no as-applied allegations are asserted.

## C. Private Property Rights under Law of the Land Clause

Article I, Section 19 of the North Carolina Constitution, the Law of the Land Clause, provides, *inter alia*: "No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art I, § 19. The

Law of the Land Clause has been held to be the equivalent of the Fourteenth Amendment's Due Process Clause in the Constitution of the United States. *See State v. Collins*, 169 N.C. 323, 324, 84 S.E. 1049, 1050 (1950). Plaintiffs argue H.B. 467 and S.B. 711 violate the Law of the Land Clause and assert the statutes facially exceed the scope of the State's police power.

¶ 16 "[A] decision of the United States Supreme Court interpreting the Due Process Clause is persuasive, though, not controlling, authority for interpretation of the Law of the Land Clause." *Evans v. Cowan*, 132 N.C. App. 1, 6, 510 S.E.2d 170, 174 (1999) (citation omitted). Our Supreme Court has expressly "reserved the right to grant Section 19 relief against unreasonable and arbitrary state statutes in circumstances where relief might not be attainable under the Fourteenth Amendment to the United States Constitution." *In re Meads*, 349 N.C. 656, 671, 509 S.E.2d 165, 175 (1998) (citation omitted).

¶ 17 In *A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 214, 258 S.E.2d 444, 448-49 (1979), our Supreme Court articulated the analysis to be applied when examining due process challenges to governmental regulations of private property, which are claimed to be an invalid exercise of the State's police power. The Court held: "First, is the object of the legislation within the scope of the police power? Second, considering all the surrounding circumstances and particular facts of the case is the means by which the governmental entity has chosen to regulate reasonable?" *Id.*

(citation omitted).

¶ 18          Our Supreme Court examined the role of a court in *Responsible Citizens in Opposition to Flood Plain Ordinance v. City of Asheville*, 308 N.C. 255, 261, 302 S.E.2d 204, 208 (1983), to "determine[] whether the ends sought, *i.e.*, the object of the legislation, is within the scope of the power."  The second prong is a two-part inquiry, requiring the court to determine: "(1) Is the statute in its application reasonably necessary to promote the accomplishment of a public good and (2) is the interference with the owner's right to use his property as he deems appropriate reasonable in degree?"  *Id.* at 261-62, 302 S.E.2d at 208 (citation omitted).

¶ 19          Our State's long-asserted interest in promoting and preserving agriculture, forestry, horticulture, livestock, and animal husbandry activities and production within North Carolina clearly rests within the scope of the State's police power.  "It is the declared policy of the State to conserve and protect and encourage the development and improvement of its agricultural land and forestland for the production of food, fiber, and other products."  N.C. Gen. Stat. § 106-700.  The first prong is met.  *Responsible Citizens*, 308 N.C. at 261, 302 S.E.2d at 208.

¶ 20          Both parts of the second prong in *Responsible Citizens* are also met.  H.B. 467 and S.B. 711 are intended to promote agricultural and forestry activities and production in North Carolina by defining and limiting nuisance claims from agricultural, forestry, and related operations.  N.C. Gen. Stat. §§ 106-701, 702.

"[W]ithin constitutional limits, it is the function of the Legislature, not of the courts, to determine the [public and] economic policy of the State and this Court may not properly declare a statute invalid merely because the Court deems it economically unwise." *Bulova Watch Co. v. Brand Distributors*, 285 N.C. 467, 478, 206 S.E.2d 141, 149 (1974) (citations omitted).

¶ 21    The asserted and purported interference in the statute with the enjoyment of property is reasonable and clearly rests within the General Assembly's enumerated powers. By passage of an act with the signature of the Governor of North Carolina, the General Assembly can modify or amend the common law or amend, replace, or repeal a state statute. *See Pinkham v. Unborn Child. of Jather Pinkham*, 227 N.C. 72, 78, 40 S.E.2d 690, 694 (1946) ("It is said that no person has a vested right in a continuance of the common or statute law. It follows, generally speaking, a right created solely by the statute may be taken away by its repeal or by new legislation." (citation omitted)).

¶ 22    Limiting potential nuisance liability from agricultural, forestry, and related operations helps ensure the State's stated goal to protect agricultural activities in North Carolina and to encourage the availability and continued "production of food, fiber, and other products." N.C. Gen. Stat. § 106-700. Plaintiff's argument is overruled.

## D. Fundamental Right to Property

¶ 23 Plaintiffs assert the limitations imposed on a cause of action for nuisance violates their fundamental right to enjoy their property, citing *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 786 S.E.2d 919, 921 (2016). In *Kirby*, our Supreme Court held the North Carolina Department of Transportation's application of the Roadway Corridor Official Map Act (repealed 2019 N.C. Sess. Laws 35), which placed restrictions on the "plaintiffs' fundamental rights to improve, develop, and subdivide their property for an unlimited period of time[]" constituted "a taking of plaintiffs' elemental property rights by eminent domain." *Kirby*, 368 N.C. at 848, 786 S.E.2d at 921.

¶ 24 The Supreme Court of North Carolina has long recognized the right to the enjoyment of property and the right to judicial review. *See Bayard v. Singleton*, 1 N.C. (Mart.) 5, 9 (1787). Here, unlike *Kirby*, Plaintiffs' have not alleged an inverse condemnation has occurred or any other kind of governmental taking by eminent domain. Plaintiffs assert these statutes facially violates their prospective fundamental right to property, which we above hold are facially constitutional under the Law of the Land Clause and the Due Process clause. Plaintiffs' argument is overruled.

## E. Local, Private, or Special Act

¶ 25 Article II, section 24 of the North Carolina Constitution states: "The General Assembly shall not enact any local, private, or special act or resolution: . . . Relating

to health, sanitation, and the abatement of nuisances[.]" N.C. Const. art II, § 24. The North Carolina Constitution further provides: "The General Assembly *may enact general laws* regulating matters set out in this Section." *Id.* (emphasis supplied).

¶ 26 Plaintiffs argue the Amendments are private or special laws "relating to health, sanitation, and the abatement of nuisances" in violation of Article II, section 23 of the North Carolina Constitution. "A statute is either 'general' or 'local', there is no middle ground." *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 656, 142 S.E.2d 697, 702 (1965).

¶ 27 "[N]o exact rule or formula capable of constant application can be devised for determining in every case whether a law is local, private, or special or whether [it is] general." *McIntyre v. Clarkson*, 254 N.C. 510, 517, 119 S.E.2d 888, 893 (1961). Our Supreme Court has adopted the "reasonable classification" test from *McIntyre* to determine whether an act is private or special prohibited by Article II, section 24 or is a general law, which the General Assembly has the constitutional authority to enact. *See Id.* at 517-19, 119 S.E.2d at 893-99.

¶ 28 A special law is "made for individual cases[.]" *Id.* at 517, 119 S.E.2d 893 (citation omitted). "A private law is one which is confined to particular individuals, associations or corporations." *Id.* (citation omitted). While, "[g]eneral laws embrace the whole of a subject and are of common interest to the whole State." *Id.* (citation omitted). A law has general applicability, if:

> it applies to and operates uniformly on all the members of
> any class of persons, places or things requiring legislation
> peculiar to itself in matters covered by the law. . . .
> Classification must be reasonable and germane to the law.
> It must be based on a reasonable and tangible distinction
> and operate the same on all parts of the State under the
> same conditions and circumstances. Classification must
> not be discriminatory, arbitrary or capricious.

*High Point Surplus Co.*, 264 N.C. at 657, 142 S.E.2d at 702-03 (ellipses in original)

(citation and internal quotation marks omitted).

¶ 29        While Plaintiffs assert the Amendments are private protections for the swine

industry, the statutes are statewide laws of general applicability to "agricultural and

forestry operation[s]." This distinction between agricultural and forestry industries

and all other industries satisfies prong one. The second prong is satisfied because of

the distinction between agricultural "production of food, fiber, and other products"

and forestry and all other industries is germane to The Amendments' stated purpose

to preserve and protect the agricultural and forestry activities and production. N.C.

Gen. Stat. § 106-700. The Amendments seek to define and ameliorate the

consequences that nuisance suits by remote parties pose prospectively to established

and essential agricultural and forestry operations. *See id.* Finally, all members of

the classifications of agricultural and forestry operations, subject to The

Amendments' general terms and applicability, may invoke their protections against

suit. *Id.* Plaintiffs' argument is overruled.

**F. Right to Trial by Jury**

Article I, section 25 of the North Carolina Constitution provides: "In all controversies at law respecting property, the ancient mode of trial by jury is one of the best securities of the rights of the people, and shall remain sacred and inviolate." N.C. Const. art I, § 25. Plaintiffs argue H.B. 467, which partially limits a jury's ability to award traditional compensatory damages and limits the compensatory damages any successor-in-interest can seek in nuisance actions, removes from the jurors a determination respecting property in violation of Article I, section 25 of the North Carolina Constitution.

Our Supreme Court has long held: "the General Assembly is the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of any common law rule, the statute supplants the common law rule and becomes the public policy of the State in respect to that particular matter." *McMichael v. Proctor*, 243 N.C. 479, 483, 91 S.E.2d 231, 234 (1956).

"The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not." *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 444, 302 S.E.2d 868, 882 (1983). The prior iterations of the Right to Farm statute dating back to 1979 and with the enactment of H.B. 467, the General Assembly has modified the common law and statutory cause of actions for nuisance claims and relevant defenses. As with many other caps on compensation

and remedies enacted in other areas of civil tort law, HB 467 did not impair nor abolish the right to a jury trial. Plaintiffs' argument is overruled.

## V.    Conclusion

The trial court did not err in granting Defendants' Rule 12(b)(6) motion to dismiss. Plaintiffs' facial challenges in their complaint fails to state any legally valid cause of action. Plaintiffs have not met their burden to show no "reasonable ground" exists to support the Amendments. *See Affordable Care*, 153 N.C. App. at 539, 571 S.E.2d at 61.

The Amendments are a valid exercise of legislative and the State's police powers, do not violate the Law of the Land Clause or Due Process, are not a special or private law, and do not deprive a prospective plaintiff of the right to a jury trial. The order of the trial court is affirmed. *It is so ordered.*

AFFIRMED.

Judges GORE and GRIFFIN concur.