N. Carolina State Bar v. Lienguard, Inc., 2014 NCBC 11.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 7288

THE NORTH CAROLINA STATE BAR,

        Plaintiff,

        v.

LIENGUARD, INC. and JANIS LUNDQUIST,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

{1}     THIS MATTER is before the court on cross-motions for judgment on the pleadings pursuant to N.C. R. Civ. P. 12(c). For the reasons stated below, the motion by Plaintiff The North Carolina State Bar ("the State Bar") is GRANTED, the motion by Defendants Lienguard, Inc. ("Lienguard") and Janis Lundquist ("Lundquist") is DENIED, and the State Bar is requested to submit a proposed injunction, after which the court will enter judgment pursuant to Rule 54(b).

*North Carolina Department of Justice, by I. Faison Hicks, Special Deputy Attorney General, and The North Carolina State Bar by David Johnson, Deputy Counsel, for Plaintiff The North Carolina State Bar.*

*Carlton Law PLLC, by Alfred P. Carlton, Jr., and Allen, Pinnix & Nichols, P.A., by Cathleen M. Plaut, for Defendants Lienguard, Inc. and Janis Lundquist.*

Gale, Judge.

## I.    INTRODUCTION

{2}     Lienguard maintains a commercial lien filing service which it offers through its internet website. The State Bar contends in doing so, Lienguard has engaged in the unauthorized practice of law ("UPL").

{3}      This litigation follows an administrative procedure during which the State Bar found probable cause to believe that there is such UPL and demanded that Lienguard cease its activity.  The State Bar then followed with its Complaint.

{4}      Defendants counterclaimed, asking the court to declare that: (1) its practices do not constitute UPL; and (2) the State Bar's effort to prevent those practices contravene the North Carolina Constitution's monopoly and equal protection clauses, and then upon such declaration to enjoin the State Bar's further enforcement.

{5}      The Parties filed cross-motions for judgment on the pleadings pursuant to N.C. R. Civ. P. 12 (c).   While Lienguard maintains that certain issues are ripe for the court's determination on the pleadings, it also contends the State Bar has further impermissibly injected facts or issues that extend beyond the pleadings. The court limits its consideration to the matters directly asserted in the Complaint, which include Defendants' actions in: (1) preparing and offering to prepare and file claims of lien pursuant Chapter 84 of the North Carolina General Statutes; (2) holding Lienguard out as competent to prepare such liens; and (3) providing and offering to provide legal advice and services for use in North Carolina.

{6}      The essential facts regarding Lienguard's commercial filing service are evident from the pleadings which, in turn, reference its website materials.  The litigation reflects the Parties' differing interpretation drawn from those facts.  The State Bar contends that the claims of lien are legal documents, and by preparing them Lienguard practices law, and provides legal advice in the course of doing so. Defendants claim that Defendants act only as agents for lien claimants who are entitled to represent themselves, provides no more than clerical services, and provides no legal advice in making generalized statements regarding North Carolina's lien laws and procedures.

{7}      The critical threshold questions are whether the claims of lien are legal documents and whether Defendants prepare them in a manner that exceeds the protection of recognized exemptions from the prohibitions of Chapter 84.  If so, then the court must further consider whether statements made in connection with

Defendants' services further constitute improper legal advice or holding oneself out as qualified and entitled to practice law in North Carolina.

{8}  After careful review, the court concludes that the claims of lien which Defendants prepare are legal documents, and the manner in which Defendants participate in preparing them constitutes UPL and should be enjoined. Therefore, Lienguard's statements constitute impermissible legal advice and holding out when made in connection with preparing such claims of lien.

{9}  In light of this determination, the court need not separately address other issues that the pleadings might raise, such as whether Defendants would engage in UPL by (1) merely filing claims of lien on behalf of their clients or; (2) making generalized statements regarding North Carolina's lien laws and procedures or Defendants' qualifications in the construction industry, absent Defendants' preparation of the claims of lien.

{10}  The court's holding should then result in the entry of an injunction narrowly drawn so as to be consistent with this Order. The State Bar is requested to submit the proposed form of such an injunction, with Defendants' comments as to form, after which the court will enter judgment. While the Complaint may raise broader issues that this Order does not finally resolve, the court intends that its holding is a final resolution on the central issue in this case: whether Defendants have engaged in UPL through the manner in which they prepare claims of lien on behalf of their clients. Accordingly, there is no just reason for delay before the court's holding is subject to appeal as provided by Rule 54(b), and the court intends to certify its judgment entering the injunction pursuant to that Rule.

## II.  FACTUAL BACKGROUND

{11}  The facts stated below for the context of the court's ruling are taken from the pleadings and from exhibits, including exhibits attached to the movant's pleadings for which the nonmovant has made admissions. *See Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 545–46, 676 S.E.2d 481, 486 (2009). The court further is allowed to consider facts of which it may take proper judicial

notice in accordance with Evidence Rule 201(b). N.C. R. Evid. 201(b) (2013); *Hope–A Woman's Cancer Ctr., P.A. v. State*, 203 N.C. App. 593, 597, 693 S.E.2d 673, 676 (2010). The court is allowed to consider material portions of Lienguard's website, www.lienguardinc.com, to which those pleadings refer and as to which there is no material factual dispute.

## A.  The Parties

{12}  The State Bar is an administrative agency of the State of North Carolina. (Compl. ¶ 2.)

{13}  Lienguard is an Illinois corporation which is not registered as a foreign corporation in North Carolina. (Compl. ¶ 4; Am. Answer ¶ 4.) Lundquist, Lienguard's former president, is not a duly licensed attorney in North Carolina and is not authorized to practice law in North Carolina. (Compl. ¶ 7; Am. Answer ¶ 7.) As part of its services, Lienguard offers to help prepare and file mechanics', laborers', and materialmen's liens. (Compl. ¶ 8; Am. Answer ¶ 8.)

## B. The Website

{14}  Lienguard operates a website with the URL www.lienguardinc.com.[1] The website describes Lienguard's services as a "commercial lien filing service." (Compl. ¶ 9; Am. Answer ¶ 9.) Lienguard indicates that, "[w]e file the documents necessary to protect our client's claim . . ." (Compl. Ex. 2;) Lienguard, *Who is Lienguard, Inc.*, http://www.lienguardinc.com/Who.html (last visited Apr. 3, 2014).

{15}  The website lists available services and corresponding prices, including: mechanics lien- $495, sheriff service- $100, demand notice- $75, preliminary notice- $75, research- "call for price", recorded notice- $135, Miller Act

---

[1] In its Complaint, the State Bar pleads that "[t]rue and accurate copies of portions of the Lienguard website are attached to this Complaint as Exhibit 2." (Compl. ¶ 9.) Lienguard admits in its Amended Answer that "copies of portions of the Lienguard website are attached to the Complaint as [State Bar's] Exhibit 2." (Am. Answer ¶ 9) Additionally, the court concludes that it may take judicial notice of the information provided on Lienguard's website because it is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination . . . ." N.C. R. Evid. 201(b).

claim- $225, preliminary bond notice (public)- $75, preliminary bond notice- $135, bond claim- $185, bond claim with research- $210, lien on funds- $200, release- $115, and reference books- $10 each. (Compl. ¶ 9, Ex. 2; Am. Answer ¶ 9;) *Current Services and Fee*s, http://www.lienguardinc.com/pricelist.html (last visited Apr. 3, 2014). Lienguard offers these services to potential clients in North Carolina, but its services also cover "the entire United States[.]" (Compl. ¶ 8, Ex. 2; Am. Answer ¶ 8.)

{16}    The pleadings contain copies of two claims of lien which Defendants prepared through the process described by the website.

## 1. Use of Customer-Supplied Information

{17}    A customer who wishes to utilize Lienguard's services completes either a downloaded form or an online form to provide the information on which the claim of lien will be based. The online questionnaire requests information regarding the following topics: "Claimant," "General Contractor," "Sub Contractor," "Job Site Owner," "Job Site Address," "Bonding Company," "Type - Service," "Contract Date & Amount," "Ship-Labor," and "Description." (Compl. ¶ 10, Ex. 2;) Lienguard, *Online Form*, http://lienguardinc.com/contactform.php (last visited Apr. 3, 2014). The form, which can be downloaded in .pdf form for completion, solicits similar information, the client's signature, and a checklist of the individual services which the client authorizes Lienguard to undertake. (Compl. Ex. 2, p. 18)

{18}    The basic information requested by the online questionnaire and the printed form does not materially differ, but the two are formatted and worded somewhat differently. *Compare* Lienguard, *Online Form*, http://lienguardinc.com/contactform.php (last visited Apr. 3, 2014) *with* (Compl. Ex. 2, p. 18.) When the customer completes the online questionnaire, the software prepares a printed form populated with the customer's answers. Lienguard, *Online Form*, http://lienguardinc.com/contactform.php (last visited Apr. 3, 2014); (Am. Answer ¶ 7.)

{19}   Lienguard indicates that once it has the requested information from its customer, "we'll do the rest." (Compl. Ex. 2;) Lienguard, *Home*, http://lienguardinc.com/index.html (last visited Apr. 3, 2014).

{20}   Lienguard inputs the customer information into a different form. The court's focus is on a claim of lien, such as a materialman lien on real property, entitled "Claim of Lien on Real Property." The "Claim of Lien on Real Property" document substantially differs from either the printed form or the online questionnaire the customer completes. In addition to changes in formatting, the "Claim of Lien on Real Property" includes a legal description which the customer is not prompted to provide in completing his form.

{21}   The State Bar avers that Lienguard independently prepares this formal legal description. *See, e.g.*, (Compl. Ex. 3 (forms Lienguard ultimately files contain legal description of the subject property); Compl. Ex. 2;) Lienguard, *Pricing*, http://lienguardinc.com/Pricelist.html (last visited Apr. 3, 2014) (including "property search" in its mechanics lien preparation services).

{22}   While the information Lienguard solicits from customers appears to be based on section 44A-12(c) of the North Carolina General Statutes, Lienguard does not present its clients with a form claim of lien with blanks to be completed by the customer. It instead gathers the requested information and then prepares the claim of lien.

{23}   Once a "Claim of Lien on Real Property" form is completed, Lienguard's representative signs the form as the client's "agent" and forwards it to the clerk of court in the county where the subject property is located. (Countercl. ¶ 5; Reply ¶ 5;) *see also, e.g.*, (Compl. Ex. 3 (Lienguard employee signing Claim of Lien form on behalf of client).)

{24}   Lienguard has prepared and filed claims of lien for clients in North Carolina. (Compl. ¶ 11; Am. Answer ¶ 11.) Specifically, the record contains two

such claims of lien filed in two North Carolina counties on March 12, 2010.[2] (Compl. ¶ 11, Ex. 3; Am. Answer ¶ 11.)

{25}     These two claims of lien were filed by Allan Popper, an employee of Lienguard, as an agent to the client. (Compl. ¶ 11, Ex. 3; Am. Answer ¶ 11.) Allan Popper is not licensed to practice law in North Carolina. (Compl. Ex. 4.)

{26}     The claim of lien on property in Johnston County was first incorrectly filed at the Register of Deeds before Lienguard refiled the claim with the Clerk of Court. (Compl. ¶ 11; Am. Answer ¶ 11.)

{27}     The record does not presently include exemplars of other documents Defendants may prepare as a part of their commercial lien service.

## 2. <u>Statements Made In Connection with the Lien Filing Service</u>

{28}     The website embodies certain statements regarding lien rights and actions that must be taken to protect them. (Compl. Ex. 2;) Lienguard, *What you should Know*, http://www.lienguardinc.com/What.html (last visited Apr. 3, 2014). The website contains a list of defined terms "associated with liens, bonds, and Miller Act." *Id.* Another section explains the importance of filing a timely claim of lien and provides North Carolina's current preliminary notice timeframe for privately-owned property. (Compl. Ex. 2;) Lienguard, *Time Requirements*, http://www.lienguardinc.com/When.html (last visit Apr. 3, 2014). Another section provides a brief summary of why liens are important tools for laborers and mechanics. (Compl. Ex. 2;) Lienguard, *You Have a Right to Lien!*, http://www.lienguardinc.com/Why.html (last visited Apr. 3, 2014).

{29}     Lienguard informs its prospective clients that liens can improve their position by giving a supplier direct access to the real property of an end user. *Id.* It warns materialmen that North Carolina customers must send out preliminary

---

[2] The State Bar pleads in its Complaint, and Lienguard admits in its Amended Answer, that Exhibit 3 contains "[t]rue and accurate copies of some of the liens prepared by [Lienguard]." (Compl. ¶ 11; Am. Answer ¶ 11.) The court may then take judicial notice of those forms and consider their content pursuant to N.C. R. Evid. 201(b).

notices of their lien rights within five to ten days of providing materials or beginning work on the jobsite. (Compl. Ex. 2;) Lienguard, *Time Requirements*, http://www.lienguardinc.com/When.html (last visited Apr. 3, 2014).

{30}   Lienguard touts its "quarter of a century of experience in the construction industry." (Compl. Ex. 2;) Lienguard, *Who is Lienguard*, http://www.lienguardinc.com/Who.html (last visited Apr. 3, 2014). It assures customers that Lienguard's "fully experienced" employees will "file the documents necessary to protect our client's claim" and provide the "highest quality of service" in so doing. *Id.* Lienguard asserts that it ensures "compliance with all current statutes relative to liens and bonds[,]" by monitoring legislative changes and newly enacted laws in all states. *Id.*

{31}   Lienguard purports to limit its liability only "to the information, dates and addresses" the claimant provides on the online form. (Compl. ¶ 10, Ex. 2;) Lienguard, *Online Form*, http://lienguardinc.com/contactform.php (last visited Apr. 3, 2014).

## C. The State Bar's Enforcement Efforts

{32}   The Authorized Practice Committee ("APC") is a State Bar committee tasked with "investigat[ing] any charges or complaints of the unauthorized practice of law against any person or entity that engaged in rendering any legal services unauthorized or prohibited by law." (Compl. ¶ 3; Am. Answer ¶ 3.) On May 7, 2010, the State Bar's counsel informed Lienguard that the APC was investigating Lienguard's activities, which the State Bar then believed might constitute UPL. (Countercl. ¶ 8; Reply ¶ 8.) In response, Lundquist wrote that Lienguard was not engaged in UPL. (Countercl. ¶ 9; Reply ¶ 9.) On August 4, 2010, Lienguard received a letter, referred to as a "Cease and Desist Letter," (Compl. ¶ 12, Ex. 4; Am. Answer ¶ 12.), which informed Lienguard that the APC "concluded that there was probable cause to believe that [Lienguard's] conduct constituted the unauthorized practice of law in violation of [N.C. Gen. Stat §§ 84-2.1, 4, and 5]," and instructed Lienguard to cease such activity. (Compl. Ex. 4.)

{33}    The State Bar alleges and Lienguard does not deny that Lienguard has continued to offer its services in North Carolina after it received the Cease and Desist Letter.  (Compl. ¶ 16.)

## III.    PROCEDURAL BACKGROUND

{34}    The State Bar filed its Complaint on May 12, 2011.  On February 27, 2012, Defendants filed their initial *pro se* Answer.  On August 31, 2012, this case was designated as an exceptional case by Order of Chief Justice Sarah Parker and assigned to the undersigned.  On November 20, 2012, Defendants filed their Amended Answer and Counterclaim.

{35}    On January 31, 2013, the Parties filed cross-motions for judgment on the pleadings ("State Bar's Motion" and "Lienguard's Motion").  The Motions have been fully briefed, heard, and are ripe for disposition.

## IV.    STANDARD OF REVIEW

{36}    "A motion for judgment on the pleadings . . . is proper when all the material allegations of fact are admitted on the pleadings and only questions of law remain."  *DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 504, 353 S.E.2d 269, 271 (1987).  The movant must show, even viewing the facts in the light most favorable to the nonmoving party, that she is clearly entitled to judgment as a matter of law.  *Cathy's Boutique v. Winston-Salem Joint Venture*, 72 N.C. App. 641, 643, 325 S.E.2d 283, 284–85 (1985).  In other words, the movant must show that no material issue of fact exists and any questions of law should be resolved in her favor.  *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

{37}    Rule 12(c) motions "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit."  *Id.*  On a 12(c) motion:

> [t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party.  All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. . . .  All allegations in the nonmovant's pleadings, except

conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Id.* at 137, 209 S.E.2d at 499 (internal citations omitted).

## V.    ANALYSIS

{38}    The State Bar contends that Defendants' activities fall within and violate North Carolina statutes proscribing the unauthorized practice of law, including preparing legal documents, providing legal advice, and holding out as qualified and entitled to practice law.  Defendants contend that their activities are clerical support that fall outside the ambit of those statutes, and generalized statements made in connection with those services are neither legal advice nor holding out.  Lienguard further argues that Chapter 84's general proscription of UPL is limited by and must be read in accord with the express language of Chapter 44A, which contemplates an agent's efforts on behalf of a lien claimant. To the extent these arguments do not prevail, Defendants contend that the vagueness of the UPL statutes prevents their being applied on the facts of this case.[3]

{39}    Analysis begins with a review of the relevant provisions of Chapters 84 and 44A.

### A.  The Statutes

{40}    UPL is regulated by Article 1 of Chapter 84 of the North Carolina General Statutes.  Article 4 of that Chapter creates the State Bar and authorizes it to investigate and bring actions to enforce Article 1's prohibition on UPL.  Different sections of Article 1 must be read in combination.

{41}    Section 84-2.1, entitled "Practice Law' defined," provides:

The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation,

---

[3] Defendants raise this constitutional argument, not in their counterclaim, but in their briefs.  (Defs. Supp. Br. 8–9.)  They have not brought an express claim to declare the UPL statutes unconstitutional nor, to the court's knowledge, made efforts to comply with the procedures to do so as provided by N.C. Gen. Stat. §1-260 (2013).

with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation . . .

N.C. Gen. Stat. § 84-2.1 (2013). The term "legal service" is not more specifically defined. Section 84-2.1 must be read in conjunction with Section 84-4, which prohibits the unauthorized practice of law.

{42}    Section 84-4, entitled "Persons other than members of State Bar prohibited from practicing law," provides in material part:

Except as otherwise permitted by law, it shall be unlawful for any person or association of persons, except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law, . . . by word, sign, letter, or advertisement, to hold out himself, or themselves, as competent or qualified to give legal advice or counsel, or to prepare legal documents[;] and it shall be unlawful for any person or association of persons except active members of the Bar, for or without a fee or consideration, to give legal advice or counsel, perform for or furnish to another legal services, or to prepare . . . for another person, firm or corporation, any other legal document.

N.C. Gen. Stat. § 84-4 (2013). The terms "legal documents" and "legal advice" are not more specifically defined. Preparation of "legal documents" expressly falls within the prohibitions of this statute.

{43}    Section 84-5 separately restricts a corporation's right to practice law. While allowing for certain specified acts as a fiduciary, Subsection 84-5(a) states general prohibitions in relevant part as follows:

It shall be unlawful for any corporation to practice law or . . . hold itself out to the public or advertise as being entitled to practice law; and no corporation shall . . . draw agreements, or other legal documents . . . or hold itself out in any manner as being entitled to do any of the foregoing acts, by or through any person orally or by advertisement, letter or circular.

N.C. Gen. Stat. § 84-5(a) (2013).

{44} Article 2 of Chapter 44A of the North Carolina General Statutes allows for the filing of statutory liens on real property. Part 1, on which the court concentrates its analysis, provides for liens by persons dealing with the owner of real property. Section 44A-8 provides lien rights to those furnishing labor, material, or services for improvements to real property. Section 44A-11 provides the method for perfecting lien rights, including filing and service of a claim of lien. Section 44A-12 provides for the place and time of filing a lien.

{45} Section 44A-12(c), entitled "Contents of Claim of Lien on Real Property to Be Filed" provides that claims of lien must substantially resemble the following form:

CLAIM OF LIEN ON REAL PROPERTY

(1) Name and address of the person claiming the claim of lien on real property:

(2) Name and address of the record owner of the real property claimed to be subject to the claim of lien on real property at the time the claim of lien on real property is filed and, if the claim of lien on real property is being asserted pursuant to G.S. 44A-23, the name of the contractor through which subrogation is being asserted:

(3) Description of the real property upon which the claim of lien on real property is claimed: (Street address, tax lot and block number, reference to recorded instrument, or any other description of real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.)

(4) Name and address of the person with whom the claimant contracted for the furnishing of labor or materials:

(5) Date upon which labor or materials were first furnished upon said property by the claimant:

(5a) Date upon which labor or materials were last furnished upon said property by the claimant:

(6) General description of the labor performed or materials furnished and the amount claimed therefor:

N.C. Gen. Stat. 44A-12(c) (2013).

{46}    Section 44A-12.1, entitled "No docketing of lien unless authorized by statute," provides procedures for the clerk's acceptance or rejection of liens for filing. Subsection (d) provides as follows:

> A claim of lien on real property, a claim of lien on real property with a notice of claim of lien upon funds attached thereto, or other document purporting to claim or assert a lien on real property that is filed by an attorney licensed in the State of North Carolina and that otherwise complies with subsection (a) of this section shall not be rejected by the clerk of superior court for indexing, docketing, recording, or filing.

N.C. Gen. Stat. 44A-12.1(d) (2013).

{47}    Section 44A-16, entitled "Discharge of record claim of lien on real property" provides in Subsection 44A-16(a)(1) that a lien may be discharged by acknowledgment of satisfaction of the lien in the presence of the clerk by: "[t]he lien claimant of record, the claimant's agent or attorney[.]" N.C. Gen. Stat. § 44A-16 (2013).

### B. The Interrelationship of Chapters 44A and 84

{48}    Defendants contend that Lienguard's filing service is no more than a clerical service in preparing a claim of lien using information supplied by the customer and limited to information specified by Chapter 44A, thus requiring no exercise of judgment.   (Am. Countercl. ¶ 5;) *see also* § 44A-12(c) (delineating required information for a claim of lien).  Referring to Section 44A-16(a)(1), Defendants further contend that the lien statutes expressly authorize a lien claimant's "agent" to take actions pursuant to the statute.  Defendants promote a construction that if an agent is authorized to cancel a lien, implicitly the agent is authorized to prepare the lien.  Defendants invoke the principle of statutory construction that a statute dealing with a specific situation controls over other statutes of more general application. *State ex rel. Utils. Comm'n v. Duke Power Co.*, 305 N.C. 1, 12, 287 S.E.2d 782, 793 (1982) (citing *Phillips v. Phillips*, 296 N.C. 590, 596, 252 S.E.2d 761, 765 (1979)).

{49}    Defendants further emphasize that the language of Section 44A-12.1(c) prohibits the clerk from rejecting a lien prepared by an attorney.  The argument is apparently that this implies recognition that other claims of lien will be prepared by non-attorneys, which the clerk can reject.

{50}    The court is not persuaded by Defendants' argument that these provisions of Chapter 44A take claims of lien outside the provisions of Chapter 84.

{51}    As to the language of Section 44A-16(a)(1), the court does not believe it reasonable to conclude that authorizing an unlicensed individual to acknowledge the discharge of a lien equates to authorizing that same unlicensed individual to prepare the claim of lien on the client's behalf or to advise the lien claimant as to what is necessary to protect his lien rights.  As to Defendants' reliance on the language of Section 44A-12.1, the section prohibits the clerk not only from rejecting a claim of lien prepared by an attorney, but also from rejecting a lien prepared by another if, on its face, the submission contains all the information required by Section 44A-12(c).

{52}    In sum, the court concludes that Chapter 44A does not restrict the application of Chapter 84 to regulate performing legal services, including the preparation of legal documents, providing legal advice, or holding out in connection with the filing of claims of lien pursuant to Chapter 44A.

{53}    The court then turns its inquiry into whether the preparation of claims of lien for another, or providing advice as to what is required to prepare such claims of lien, constitutes legal services or the preparation of a legal document within the purview of Chapter 84.[4]

## C.  A Claim of Lien Is a "Legal Document"

{54}    Defendants urge that the court should conclude that their conduct does not fall within the definition of "practice of law" provided by Section 84-2.1 because a claim of lien is not within the list of documents "specifically includ[ed]" in Section

---

[4] The court expresses no opinion on whether the mere act of filing the claim of lien with the clerk of court on behalf of another constitutes the practice of law.

84-2.1's list.  (Mem. Supp. Defs.' Mot. Pursuant to Rule 12(c) J. on Pleadings ("Defs. Supp. Br.") 8–9.)  The practical effect of this assertion would be to confine the scope of the statute exclusively to those "specifically includ[ed]" items, even if another non-specified document has legal effect.  That construction would render the introductory general reference to "legal services" superfluous.  Defendants' construction, which the court rejects, runs afoul of the separate principle of statutory construction to construe a statute as to achieve the legislative intent.  N.C. Gen. Stat. § 12-3 (2013); *Ballard v. City of Charlotte*, 235 N.C. 484, 487, 70 S.E.2d 575, 577 (1952).

{55}    Further, Section 84-4 makes clear that the legislature intended to apply Chapter 84 to the preparation of "legal documents."  The North Carolina Supreme Court has defined a legal document to include documents or contracts by which legal rights are secured.  *State v. Pledger*, 257 N.C. 634, 636–37, 127 S.E.2d 337, 339 (1962).  Clearly, a claim of lien is prepared to enforce the claimant's statutory lien rights.  *See, e.g.*, *Embree Constr. Grp. v. Rafcor, Inc.*, 330 N.C. 487, 492, 411 S.E.2d 916, 921 (1992) (describing the claim of lien's effect).  It is, therefore, a "legal document."

{56}    Indeed, Lienguard's website recognizes and stresses the legal significance and importance of the claim of lien.  *What you should Know*, http://www.lienguardinc.com/What.html (last visited Apr. 3, 2014) (noting that suppliers can improve their payment position by getting direct access to the real estate of an end user).  Lienguard's stated purpose is to "file the documents necessary to protect our client's claim. . . "  *Who is Lienguard, Inc.*, http://www.lienguardinc.com/Who.html (last visited Apr. 3, 2014).

{57}    Preparing a claim of lien is preparing a legal document.  The court then turns to whether Defendants' efforts in preparing a claim of lien violate Chapter 84 or are authorized by the recognized "scrivener's exception."

**D. Defendants' Efforts on Their Clients' Behalf Exceed the Limited Protection Given "Scriveners"**

{58} A lien claimant is entitled to prepare his own claim of lien on his own behalf without offending Chapter 84. *Pledger*, 257 N.C. at 637, 127 S.E.2d at 339.

{59} States outside of North Carolina, federal bankruptcy courts in North Carolina, and the State Bar, through at least one consent order, have recognized that one, including a corporation, can provide limited assistance in preparing a document for one who is representing himself without engaging in UPL, recognizing what has been referred to as a "scrivener exception" to UPL statutes. *See, e.g., In re Matthews*, 58 Idaho 772, 777, 79 P.2d 535, 538 (1938) ("The mere act of a scrivener who writes something dictated by another would not be practicing law.") (quoting *Eley v. Miller*, 7 Ind. App. 529, 535, 34 N.E. 83, 837 (1893)); *In re Lazarus*, No. 05-8024C-7D, 2005 Bankr. LEXIS 1093, at *9 (Bankr. M.D.N.C. Mar. 14, 2005) (discussing the scope of the exception); *N.C. State Bar v. Leapfrog Enters., Inc.*, No. 03-CVS-9813 (N.C. Super Ct. Jul. 14, 2006), (Defs. Supp. Br. Ex. A.) This exception recognizes that merely typing or "scrivening" a petition or legal document does not constitute the practice of law, so long as the non-attorney does not create the document, or advise on how the document should be prepared. *In re Lazarus*, 2005 Bankr. LEXIS 1093, at *9.

{60} The court finds these decisions persuasive and concludes that the North Carolina appellate courts will likewise recognize the exception. The court then adopts the exception and seeks to apply it here.

{61} Defendants claim that services provided pursuant to Lienguard's lien filing service fall within the scrivener exception because the services are only clerical. (Defs. Supp. Br. 16.) Defendants' assertion might stand on firmer footing had Lienguard chosen to do more than present its clients with a "fill in the blanks" form modeled on Section 44A-12(c), such that the form would be populated with client-supplied information without any change or further manipulation. This, however, is not the process Lienguard employs.

{62}     As construed by the bankruptcy court, a scrivener may meet with a prospective client, provide a blank form for the client to complete without assistance from the scrivener, and type the client's information onto the same form, without change or alteration. *In re Lazarus*, 2005 Bankr. LEXIS 1093, at *9.  However, the same court held that the exception does not protect taking client information from one form and inputting it into a *different* form.  In that instance, the service provider is more than a scrivener; he has actually created the legal document. *In re Langford*, No. 04-12447C-7, 2005 Bankr. LEXIS 3201, at *46 (M.D.N.C. Nov. 9, 2005); *see also In re Graham*, No. 02-81930C-7D, 2004 Bankr. LEXIS 1678 (Bankr. M.D.N.C. Feb. 10, 2004) (finding that when the defendant took "information placed in the Workbook by the customer and [by] entering it . . . into the Official Forms, which differ from the Workbook, [the preparer and his employer] cease[d] to be mere scriveners . . . and, instead, engage[d] in 'the preparation . . . of petitions for use in any court'").

{63}     Defendants assert, however, that the State Bar must be bound to follow a different rule because it entered a consent order approved by a North Carolina court which explicitly condoned questionnaire-based services similar to those Lienguard employs, in *The North Carolina State Bar v. Leapfrog Enterprises, Inc.* (Defs. Supp. Br. 14–15.)  The Consent Order does not support Defendants' assertions.  It contains an injunction which mandates that any document the defendants might produce "conforms exactly to the customer's instructions shown on the document form or template and any workbook/questionnaire provided to [the] customer without any alteration or modification[.]"  (Defs. Supp. Br. Ex. A, Order, ¶ 2(d).)

{64}     Further, Lienguard provides information beyond the questionnaire which may conform to Section 44A-12(c).  Even as to that information, Lienguard itself prepares one or more different forms.  The final claim of lien does not fully conform to the form the customer completed.[5]   In preparing the claim of lien on

---

[5] As noted, this Order is limited to claims of lien, as the record does not include examples of other documents Lienguard may provide as a part of its commercial lien services.

their client's behalf, Defendants have exceeded a scrivener's permissible assistance. (*Compare* Compl. Ex. 2 pp. 15–16, 17–18 *with* Compl. Ex. 3.)  Further, the evidence indicates that Lienguard, not its customer, prepares the legal description of the subject property included in the final claim of lien.

{65}    In sum, the court concludes that: (1) the claim of lien is a legal document; (2) preparing that document constitutes the practice of law when done on behalf of another, save and except for limited assistance of a scrivener; (3) Lienguard performs services beyond that of a scrivener, and in doing so it engages in the unauthorized practice of law in violation of Section 84-2.1 and Section 84-5.

{66}    The court now turns to whether Defendants have then also violated the prohibitions on providing legal advice or "holding out."

### E. Lienguard's Statements Made for the Purpose of and in Connection with Preparing a Legal Document on Behalf of its Clients Constitute Unauthorized Legal Advice

{67}    The State Bar asserts that Defendants have provided legal advice and held Lienguard out as competent and entitled to prepare legal documents.  (Compl. ¶¶ 10, 15.)  In particular, the State Bar points to the statements on the website that advise clients as to the purposes of liens, what is required to file them, notices that should be given, and the protection liens afford the claimant. (Compl. Ex. 2;) *What you should Know*, http://www.lienguardinc.com/What.html (last visited Apr. 3, 2014); Lienguard, *Time Requirements*, http://www.lienguardinc.com/When.html (last visited Apr. 3, 2014)).[6]

{68}    Defendants assert that neither Section 84-2.1 nor any authoritative legal or conventional reference formally defines "legal advice," and the definition

---

[6] The court acknowledges Defendants' contention that the court should not extend beyond the express language and claims of the State Bar's Complaint. (Defs. Opp'n Br. 2–4.)  However, the court also notes that each facet of Lienguard's website that Plaintiff mentioned in its briefing was attached to its Complaint as Exhibit 2.  (Compl. ¶ 9, Ex. 2; Answer ¶ 9.)  As noted, the court has limited its express holding to the preparation of claims of lien and statements on the website in connection with doing so.

does not and should not extend to "basic information about what a lien is and information about related concepts." (Defs. Opp'n Br. 8.)

{69} The court need not and does not presently determine whether the mere publication of such generalized statements on the website would violate Chapter 84. But here, those statements are made in connection with and for the purpose of further preparing specific legal documents. They are no longer properly considered as mere generalizations.

{70} While the court concludes that "legal advice" has a generally well recognized meaning, if further specificity is required, the court again finds descriptions of the term in other cases instructive. In the course of the decisions described above, the North Carolina federal bankruptcy courts considered the context of "legal advice" in conjunction with efforts by one claiming to be no more than a scrivener. In *Graham*, the court determined that a workbook and guide intended to clarify information required on official bankruptcy forms, schedules, and statements of financial affairs constituted legal advice, because they were provided to customers for whom legal documents were prepared and the workbook was not merely a blank copy of the official forms. *In re Graham*, 2004 Bankr. LEXIS 1678, at \*37–\*38. The court in *Graham* also noted the materials it considered contained basic definitions and explanations of legal terms, as does Lienguard's website. *Id.* Additionally, the court in *Langford* held that general overviews, such as what to expect during certain bankruptcy proceedings, how to handle an overzealous trustee, and how to rebuild credit after bankruptcy, when offered in conjunction with document preparation services, constituted impermissible legal advice. *In re Langford*, 2005 Bankr. LEXIS 3201, at \*46. The significant point is that the information was provided to advise the client as to how the document should be prepared. The court agrees with the bankruptcy court's conclusion that under these circumstances, those statements constitute legal advice within the meaning of Chapter 84.

{71} Other courts have similarly approached the provision of legal advice. *See, e.g., Green v. Huntington Nat'l Bank*, 3 Ohio App. 2d 62, 64, 209 N.E.2d 22,

230 (1964) (defining legal advice as "[t]he providing of specific legal information in relation to specific facts"); *Shoup v. Dowsey*, 134 N.J. Eq. 440, 452, 36 A.2d 66, 73 (1944) (finding the defendant gave legal advice where his communications were designed to influence another individual against disposing of her legal rights). For example, one Tennessee Bankruptcy court determined that "providing clients with explanations or definitions of such legal terms of art . . . is, by itself, giving legal advice." *In re Rose*, 314 B.R. 663, 705 (Bankr. E.D. Tenn. 2004). In *Rose*, the court held that Ms. Motley, a bankruptcy petition preparer, had engaged in the unauthorized practice of law by giving legal advice to customers because her materials provided "explicit instructions as to what the terms mean, how to fill the [information in,]" and statutory information regarding the relevant law on exemptions. *Id.* at 707.

{72}    In sum, Lienguard's various statements, including its definition of lien law terms, warnings regarding time requirements, and reminders about sending out preliminary notices within five to ten days of beginning work, when combined with its preparation of legal documents in the manner described above, constitute providing legal advice.

{73}    Therefore, Lienguard's statements are in violation of Chapter 84. The court need not and does not separately opine whether such statements would constitute legal advice if made generally and without the context of being provided in connection with Lienguard's preparation of legal documents.

## F. <u>Likewise, Lienguard's Statements Made in Conjunction with Preparing Claims of Lien Are Impermissible Holding Out</u>

{74}    Lienguard advertises its depth of experience in the construction industry. (Compl. Ex. 2;) Lienguard, *Who is Lienguard*, http://www.lienguardinc.com/Who.html (last visited Apr. 3, 2014). It also emphasizes its continued commitment to compliance with the law by monitoring legislative changes and newly enacted laws in all states. *Id.*; *see also* (Compl. Ex. 2;) Lienguard, *Where we can help you*, http://www.lienguardinc.com/Where.html

(last visited Apr. 2, 2014) ("One office, individual attention and 25 years experience."). Lienguard's statement that it has a staff "fully experienced in the construction industry which offers the highest quality of service to [Lienguard] clients," with "a quarter of a century of experience in the construction industry[,]" is a public representation that Lienguard is competent to undertake the services it offers. (Compl. Ex. 2;) Lienguard, *Who is Lienguard*, http://www.lienguardinc.com/Who.html (last visited Apr. 3, 2014). These credentials are offered to convince customers that Lienguard can "do the rest" to protect a lien claimant's rights. (Compl. Ex. 2;) Lienguard, *Home*, http://lienguardinc.com/index.html (last visited Apr. 3, 2014).

{75}    Again, the court need not and does not now opine whether such statements are permissible when they are not made with specific reference to and in specific connection with impermissible preparation of legal documents.

{76}    However, they are here made for the specific purpose of drawing a client to the commercial lien preparation service and in specific connection with drafting such claims of lien. As such, they violate Sections 84-4 and 84-5.

## G. Chapter 84 Is Not Unconstitutionally Vague As Applied to Defendants.

{77}    Defendants assert that Section 84-2.1 is so vague due to its lack of definitions that it cannot constitutionally be applied to Lienguard.

{78}    A statute may be unconstitutionally vague if it either: "(1) fails to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited'; or (2) fails to 'provide explicit standards for those who apply [the law].'" *Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 540, 571 S.E.2d 52, 62 (2002) (quoting *State v. Sanford Video & News, Inc.*, 146 N.C. App. 554, 556, 553 S.E.2d 217, 218 (2001)). But, "impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it

uniformly, constitutional requirements are fully met." *Ellis v. Ellis*, 68 N.C. App. 634, 635–36, 315 S.E.2d 526, 527 (1984).

{79}    Vagueness attacks on a statute are subject to certain limitations. An individual whose conduct clearly falls within the acts prohibited by the statute does not have standing to challenge it for vagueness. *State v. Barker*, 138 N.C. App. 304, 307, 531 S.E.2d 228, 230 (2000); *State v. Daniels*, 741 S.E.2d 354, 357 (N.C. App. Ct. 2012). A facial constitutional vagueness challenge fails if the effect of the statute as applied to the claimant is clear.

{80}    In *Barker*, the Court of Appeals held that the defendants did not have standing to facially challenge a statute prohibiting the operation of a motorcycle without wearing a safety helmet approved by the Commissioner of Motor Vehicles. 138 N.C. App. at 307, 531 S.E.2d at 230. Though the *Barker* Court could conceive of circumstances under which the statute's provisions might become vague, the defendants there did not fall within the class of persons adversely affected by any such vagueness because they were not wearing *any* safety helmets. *Id.*

{81}    The court does not look to Section 84-2.1 alone. That Section must be read in conjunction with other provisions of Chapter 84. Section 84-4 lists prohibited acts for individuals who are not licensed to practice law.[7] The provision specifically states that "it shall be unlawful for any person . . . to give legal advice or counsel, or to prepare legal documents." § 84-4. The same rule applies to corporations as provided by Section 84-5(a).

{82}    The court finds no vagueness in the statutes' prohibition against preparing legal documents without a law license. The court also finds that there is no vagueness involved in concluding that a claim of lien is a legal document. It is clear that Lienguard believes the claim of lien is a legal document. Its own website emphasizes the legal importance of a claim of lien to protect its clients' interests.

---

[7] While not specifically addressing the issues now before the court, in *Seawell v. Carolina Motor Club, Inc.*, 209 N.C. 624, 632, 631 S.E.2d 540, 544 (1936), the North Carolina Supreme Court held that section 84-4 is constitutional and valid.

{83}     Defendants' conduct clearly falls within the parameters of Chapter 84's provisions concerning the practice of law.  Defendants had fair notice of what Lienguard was not allowed to do.  *See, e.g.*, *In re Langford*, 2005 Bankr. LEXIS 3201, at *46 (determining that taking raw customer information and inputting it into a different final document constitutes the unauthorized practice of law); *In re Graham*, 2004 Bankr. LEXIS 1678, at *37–*38 (holding that clarifications regarding required information on bankruptcy forms constituted UPL when offered with a workbook); *see also Barringer v. Caldwell Cnty. Bd. of Educ.*, 123 N.C. App. 373, 378–79, 473 S.E.2d 435, 439 (1996) (stating that case law surrounding a term's legal usage gives the term "well-defined contours which make it a constitutionally appropriate standard.").

{84}     Defendants cannot avoid application of Chapter 84 to their conduct upon their claim that the statutes were too vague to allow them to conform their conduct to the statutes.  To the extent that Defendants would intend to challenge the provisions of Chapter 84 as void on their face, there is no evidence that they have taken the necessary procedural steps to seek this declaration.  *See* N.C. Gen. Stat. § 1-260 (2013) (requiring service on the Attorney General where a party alleges that a statute is unconstitutional).

## H. Lienguard's Monopoly Claim Is Without Merit

{85}     Defendants' first Counterclaim is for violation of the monopoly clause of the North Carolina Constitution.  (Defs. Opp'n Br. 17 (arguing for a narrow interpretation of the North Carolina unauthorized practice of law statutes, which were not enacted to confer an absolute monopoly on the legal profession in the preparation of legal documents) (citing *Pledger*, 257 N.C. at 637, 127 S.E.2d at 339).)

{86}     The State and its agencies have the power to exclude certain individuals from a profession where the power to regulate is derived from statute

and is exercised appropriately.[8] *St. George v. Hardie*, 147 N.C. 88, 97, 60 S.E. 920, 924 (1908); *see also State v. Siler*, 169 N.C. 314, 317, 84 S.E.2d 1015, 1016 (1915) (affirming the State's power to regulate who enters certain professions "to protect the public against incompetents and imposters"). Where the State agency does this, "no monopoly or combination, in a legal sense, can arise[.]" *St. George*, 147 N.C. at 97, 60 S.E.2d at 924.

{87}    The State Bar is a statutorily-created agency vested with the power to "do all things necessary in the furtherance of the purposes of this Article that are not otherwise prohibited by law." N.C. Gen. Stat. § 84-23 (2013); §§ 84-15, 84-17 (2013) (creating the State Bar as an agency of the State of North Carolina and describing the State Bar's governance and power, respectively). Section 84-37 expressly gives the State Bar the authority to regulate the unauthorized practice of law. N.C. Gen. Stat. § 84-37 (2013) (giving the State Bar the authority to "inquire into and investigate" any charges of unauthorized practice of law and bring an action in superior court to enjoin such practice). While the statute does not give the State Bar power to unilaterally enjoin the unauthorized practice of law, it is entitled to "hold preliminary hearings, find probable cause, and recommend . . . that a complaint for injunction be filed" or "issue letters of caution, which may include a demand to cease and desist, to respondents in cases where the Committee concludes" that there is probable cause to believe that the respondent has engaged in the unauthorized practice of law and "respondent is unlikely to engage in the conduct again[.]" 27 N.C. Admin. Code 01D.0206 (4)(a)(ii) (2013) (emphasis added).

{88}    To the extent that Defendants' monopoly claim is based on the State Bar's allegedly "anti-competitive conduct" in issuing the Cease and Desist Letter, (Compl. Ex. 4,) and bringing this action against them, the court rejects this argument. Here, the State Bar conformed to the proper procedure of first issuing its letter and following with suit when Defendants continued their course of conduct.

---

[8] The court does not address policy considerations as to whether Chapter 84 should be legislatively changed to lessen regulation on the practice of law.

{89}    The court does not here opine on whether a similar monopoly claim should be viewed differently if the State Bar persists in seeking to prohibit conduct which the court concludes falls outside the statutory UPL prohibitions.

I.  Defendants' Equal Protection Claim Is Without Merit

{90}    To successfully bring an action for violation of the North Carolina Constitution's equal protection provision, a claimant must allege that it is entitled to heightened scrutiny, or that the discriminatory acts were without a rational basis. *Good Hope Hosp., Inc. v. N.C. Dep't of Health and Human Servs.*, 174 N.C. App. 266, 274–75, 620 S.E.2d 873, 880–81 (2005) (dismissing equal protection claims under the North Carolina Constitution and the United States Constitution for failure to allege a lack of rational basis); *see Affordable Care*, 153 N.C. App. at 535, 571 S.E.2d at 59 (stating that generally, a deprivation of liberty or property only constitutes a violation under article I, Section 19 where the challenged action bears no rational relationship to a valid state objective) (citing *Rhyne v. K-Mart Corp.*, 149 N.C. App 672, 562 S.E.2d 82; *Dobrowolska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590 (2000)).  Here, Defendants assert no fundamental right or any other basis for heightened scrutiny.  Indeed, the right to engage in business is not a fundamental right as a matter of law. *Affordable Care*, 153 N.C. App. at 536–37, 571 S.E.2d at 59–60 (citing *In re Certificate of Need for Aston Park Hosp., Inc.*, 282 N.C. 542, 550, 193 S.E.2d 729, 735 (1973)).  Therefore, rational basis is the proper test to apply.

{91}    Under this test, the state action or law survives "if it bears 'some rational relationship to a conceivable legitimate interest of government.'" *Id.* at 536, 571 S.E.2d at 59 (quoting *Clark v. Sanger Clinic, P.A.*, 142 N.C. App. 250, 357–58, 542 S.E.2d 668, 673 (2001)).  In *Affordable Care*, the Court of Appeals found that the challenged rule's purpose, "to protect the public health and welfare with respect to the practice of dentistry," was reasonably related to its effect, prohibiting corporations, which cannot hold the proper licenses, from practicing dentistry. *Id.* at 537–39, 539, 571 S.E.2d at 60, 61.

{92}    The same principles are at play here.  The unauthorized practice of law statutes' purpose is to "better [the] security of the people against incompetency and dishonesty in an area of activity affecting general welfare."  *Pledger*, 257 N.C. at 637, 127 S.E.2d at 339 (1962).  In bringing suit in superior court to enforce these statutes, and in issuing the Cease and Desist Letter to Lienguard, the State Bar's actions are reasonably related to this legitimate purpose.

{93}    The court does not here opine whether an equal protection claim should be viewed differently if the State Bar persists in seeking to prohibit practices that a court finds fall outside the parameters of the statutory UPL prohibitions.

## VI.    CONCLUSION

{94}    For the foregoing reasons:

1. Defendants' Rule 12(c) Motion is DENIED, and their counterclaims will be DISMISSED;

2. The State Bar's Rule 12(c) Motion is GRANTED to the extent that it seeks a declaration that:

   a. Defendants have violated N.C. Gen. Stat. §§ 84-4 and 84-5 by preparing claims of lien for others without being licensed to do so;

   b. Defendants have violated N.C. Gen. Stat. §§ 84-4 and 84-5 by providing legal advice in connection with the preparation of claims of lien without being licensed to do so;

   c. Defendants have violated N.C. Gen. Stat. §§ 84-4 and 84-5 by holding out that they are competent and entitled to prepare claims of lien without being licensed to do so;

3. The State Bar is entitled to a permanent injunction prohibiting these specific violations of Chapter 84;

4. The State Bar shall within twenty days of the date of this Order submit a proposed form of a permanent injunction, which has been first offered to Defendants for comments as to form, after which the court will issue its judgment pursuant to Rule 54(b).

This the 4th day of April, 2014.